Leland G. NEUBERG and Joel G. Neuberg, Plaintiffs–Appellants,

v.

MICHAEL REESE HOSPITAL FOUNDATION, et al., Defendants–Appellees.

No. 96–2383.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 16, 1997.

Decided July 29, 1997.

Charles E. Adler, LeRoy Neuberg, Chicago, IL, for Leland G. Neuberg and Joel G. Neuberg.

Hugh C. Griffin, David C. Hall, Jason A. Parson, Lord, Bissell & Brook, Robert A. Kezelis, Margaret Wolot, Michael R. Webber, French, Kezelis & Kominiarek, James P. DeNardo, Robert Pisani, Kristin Dvorsky, McKenna, Storer, Rowe, White & Farrug, Chicago, IL, for Michael Reese Hospital and Medical Ctr., a corporation.

David A. Kanter, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Arthur H. Rosenblum.

Hugh C. Griffin, David C. Hall, Hugh S. Balsam, Lord, Bissell & Brook, Chicago IL, for J. William Holland, as Special Administrator of the Estate of Philip Rosenblum, M.D., and Erich Uhlmann, M.D.

Before ESCHBACH, COFFEY, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

This is an appeal from the district court's denial of a motion filed under Rule 60(b)(6) that sought to reopen a case that had been settled some 21 months earlier. The lawsuit itself had been a medical malpractice action, filed in 1975, that alleged negligence in connection with a 1947 use of radiation therapy to treat plaintiffs' tonsillitis. The district court found that Leland and Joel Neuberg, the plaintiffs, had not presented the kind of extraordinary reason to disturb the final judgment it had entered in reliance on the settlement. We agree and affirm the judgment of the district court.

This lawsuit began in 1975 when Leland and Joel Neuberg sued Michael Reese Hospital and Medical Center, Michael Reese Research Foundation, Dr. Arthur Rosenblum, and J. William Holland as Special Administrator of the estates of Dr. Philip Rosenblum and Dr. Erich Uhlmann for medical malpractice. The details of their claims are not pertinent to this appeal. As the Neubergs put it in their brief on appeal, "[i]n early 1994, the court indicated irritation with the slow pace of this 19 year-old case." District Judge Norgle decided to set March 28, 1994, as a firm trial date—an action that had the predictable effect of focusing the parties' attention on the possibility of settling the case. On March 25, the parties met at the law offices of Lord, Bissell & Brook in Chicago to discuss settlement further. Going into that meeting, the defendants tell us now that their latest settlement offer was $300,000. At the meeting, however, the plaintiffs expressed some concern about the amount of the attorneys' liens that might have accumulated in the case over its 19-year history. At

least five attorneys who had not filed waivers of liens had formally represented the Neubergs, even though others orally indicated at the meeting that they would not seek to collect a fee from the settlement proceeds. Whether for this reason or for another (and it is important to note that it does not matter at this juncture), at the end of the meeting the defendants offered a $350,000 settlement to the Neubergs and they accepted.

Attorneys for the defendants reduced the agreement to writing and signed it on behalf of all the defendants; Leland signed it individually and on behalf of Joel, and Anthony McGuire signed it as counsel for both Leland and Joel, signifying (as the Neubergs concede in their brief) "plaintiffs' unconditional acceptance." As the written settlement agreement required, on March 28, 1994, the Neubergs moved under Fed.R.Civ.P. 41(a)(2) for voluntary dismissal of the suit with prejudice. The court was evidently pleased that the parties had succeeded in resolving their differences, as its remarks upon granting the Rule 41(a)(2) dismissal reflect:

THE COURT: So the entire settlement agreement but for the actual amount will be filed.

MR. PARSON (for the defendants): Your Honor, we had not anticipated filing the entire settlement.

THE COURT: I'm not going to require it, but I want to be sure that this case is totally, completely and absolutely resolved. And is that the status of the case?

MR. PARSON: Yes.

MR. MCGUIRE (for the plaintiffs): Yes.

After this exchange, the court made it clear that the dismissal would be with prejudice and that there was no need to file the written settlement agreement as long as the document would be available in the future if it was needed. He concluded by announcing that "[t]he agreed motion to voluntarily dismiss the case based upon a settlement is granted, and the matter is dismissed with prejudice.... This is a final order.... It is meant to be and is a final judgment. The matter is dismissed with prejudice." The court did not retain jurisdiction over the case, nor did it incorporate the terms of the settlement agreement into its order of dismissal.

The seven insurance companies that had policies with the various defendants entered into an agreement around the time of the settlement to split up the sum of $350,000 among themselves, assigning a particular amount to each one. Problems arose almost immediately after the dismissal order over the question of attorneys' liens for the Neubergs' prior counsel. The Neubergs took the position that prior counsel were not entitled to any of the settlement proceeds and that any claims they might have to the contrary were invalid. Defense counsel, David Hall, wrote to McGuire, who was still representing the Neubergs, on April 14, 1994, pointing out that the defendants and their insurance carriers could not release any funds until the question of liens was resolved. Hall's letter identified seven such attorneys or law firms, and it enclosed a release of attorney's lien form for each of them, explaining:

Although I understand that your clients maintain that these various attorneys do not have legally-perfected liens, that is a controversy that I cannot subject my clients, their insurance carriers and/or my firm to. Consequently, I will need *each* of these release[sic] of attorneys' liens to be properly executed and returned to my attention before I can direct that any of the settlement drafts be prepared and made payable to your clients in their name only. If any of the above-mentioned attorneys refuse to execute their respective release of attorney's lien, I will be compelled to include their name on all of the settlement drafts.

The plaintiffs were unwilling to handle matters as Hall proposed. They insisted that the lien releases were unnecessary. They rejected the defendants' offer to deposit $150,000 into a district court escrow account and to file an interpleader action to resolve any competing claims to that portion of the settlement, which the defendants believed to be ample to cover any possible liens. Then the defendants rejected the Neubergs' counteroffer to have $50,000 deposited in a private escrow account, under which the balance after payment of liens would revert to the Neubergs on March 29, 1995. They pointed out, correctly enough, that a private escrow would preclude them from filing a federal

interpleader action, and (more worrisomely) it would not assure proper notice to the former attorneys or proper preservation of the funds.

Six months passed without any progress on the lien dispute. At a meeting of October 5, 1994, which had been scheduled for the final exchange of documents and settlement drafts, the defendants tendered checks to the Neubergs that contained (in addition to their names) the names of the prior attorneys as payees. The Neubergs rejected these checks out of hand because of that fact. (Two of the checks had also expired, but the defendants promised to reissue them promptly.) Next, the parties discussed interpleader again, but the defendants were willing to file such an action only if the Neubergs would agree not to object to the immediate dismissal of the defendants. The Neubergs were not willing to make such a promise, and so the interpleader idea was also abandoned. On May 5, 1995, Hall again wrote to the plaintiffs, more or less reiterating his position from the letter of April 14, 1994: the Neubergs could get clean checks if they furnished a full set of releases, and otherwise they would get checks made payable both to themselves and any former attorneys who had not executed a release.

Matters remained at this impasse until January 19, 1996, when the Neubergs filed a "Motion under Rule 60(b)(6) to Vacate Dismissal Order of March 28, 1994, and for Entry of Judgment in Accordance with Terms of Settlement Agreement Entered Into On March 25, 1994." In a written order issued May 3, 1996, Judge Norgle denied the motion. See *Neuberg v. Michael Reese Hosp. and Medical Ctr.*, 166 F.R.D. 398 (N.D.Ill.1996). As he acknowledged, some courts have held that the complete repudiation of a settlement agreement can be the kind of extraordinary development that would justify Rule 60(b)(6) relief, see *Keeling v. Sheet Metal Workers Int'l Ass'n*, 937 F.2d 408, 410 (9th Cir.1991); *Fairfax Countywide Citizens Ass'n v. Fairfax County*, 571 F.2d 1299, 1302–03 (4th Cir.1978); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.1976), and this court has suggested in dicta that it would follow the same rule, see *McCall–Bey v. Franzen*, 777 F.2d 1178, 1183–84, 1186 (7th Cir.1985) (rescission of

settlement agreement and vacatur of dismissal may be remedies for defendant's breach); *United States v. Mt. Vernon Memorial Estates, Inc.*, 734 F.2d 1230, 1235 (7th Cir.1984). Nevertheless, Judge Norgle found that rule inapplicable to the situation before him. The issuance of checks made payable to additional payees and bearing allegedly expired validity dates was not, he held, tantamount to a complete frustration of the agreement. Furthermore, he pointed out that he had neither retained jurisdiction over the case nor had he incorporated the terms of the agreement into his order. See 166 F.R.D. at 400. In the alternative, the judge also found that the Neubergs' motion, filed some 21 months after the entry of his final judgment, had not been brought "within a reasonable time" as required by Rule 60(b)(6). Since the Neubergs knew of the impasse almost from the beginning of that 21–month period of time, their motion was too late. See *id.* at 401. Last, the judge commented that fora exist where the plaintiffs could seek to have their settlement agreement enforced or interpreted: the state courts, or maybe even the federal court, as the parties appear to be diverse and the amount exceeds $50,000 (and $75,000). See *id.* at 400 n. 2, 402.

On appeal, the Neubergs have listed no less than twelve issues for our consideration. Summarizing, they claim that the district court abused its discretion in denying the Rule 60(b)(6) motion both because its ruling was inconsistent with the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), and because the motion was timely; that the district court had a duty to construe and enforce the settlement agreement once it found that diversity jurisdiction would be proper between the parties; and that in many other ways the court's denial of Rule 60(b)(6) relief failed to take account of all the facts and was thus an abuse of discretion.

Despite the Neubergs' fervent belief to the contrary, *Kokkonen* in no way suggests that the district court abused its discretion. In that case, like this one, the parties had settled state law claims in a diversity case before the district court, and the stipulation

and order of dismissal with prejudice under Fed.R.Civ.P. 41(a)(1)(ii) did not reserve jurisdiction in the district court to enforce the agreement. When a dispute arose, the parties returned to the district court for help, which it rendered, claiming an inherent power to enforce the agreement. The Court of Appeals for the Ninth Circuit agreed with this rationale, but the Supreme Court reversed. It found that the district court had no jurisdiction to enforce the agreement, in the absence of an independent basis of federal jurisdiction, and it commented that "[s]ome Courts of Appeals have held that [reopening of the dismissed suit by reason of breach of the agreement] can be obtained under Federal Rule of Civil Procedure 60(b)(6)." 511 U.S. at 378, 114 S.Ct. at 1675. The remainder of the opinion discussed the jurisdictional issue in more detail, noting in addition that the "terms and conditions as the court deems proper" required for a dismissal at the plaintiff's instance under Fed. R.Civ.P. 41(a)(2) (such as the one in this case) may include the parties' compliance with the settlement agreement or the court's retaining jurisdiction over the settlement agreement, and that parties are entitled, if they wish, to incorporate similar conditions into dismissals by stipulation. See *id.* at 381–82, 114 S.Ct. at 1677.

■ Nothing in *Kokkonen* purports to change the stringent standards that govern the availability of relief under Rule 60(b)(6). As to that, both the Supreme Court and this court have been perfectly clear that the matter lies within the sound discretion of the district court, see *Helm v. Resolution Trust Corp.,* 84 F.3d 874, 877 (7th Cir.1996), that a motion under Rule 60(b)(6) is not a substitute for a timely motion in the district court to reconsider or a timely appeal, see *Donald v. Cook County Sheriff's Dep't,* 95 F.3d 548, 554 (7th Cir.1996), and that an appellate court will rarely disturb a district court's decision on this kind of motion. See *id.; Provident Sav. Bank v. Popovich,* 71 F.3d 696, 700 (7th Cir.1995) (Rule 60(b)(6) is even more highly circumscribed exception in rule already limited to exceptional circumstances). The Neubergs' suggestion in their brief that courts should "ordinarily incline towards granting rather than denying relief" under the Rule has things exactly backwards. Judge Norgle

also did not abuse his discretion in concluding that in the circumstances of this case 21 months was an unreasonable period of time to wait before filing the motion, especially since the plaintiffs knew of the stalemate at least by October 1994 and *Kokkonen* had been decided several months beforehand. See *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.,* 507 U.S. 380, 393, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993) (party seeking relief under Rule 60(b)(6) must demonstrate "extraordinary circumstances" why it could not move within one year); *Lyles v. Commercial Lovelace Motor Freight,* 684 F.2d 501 (7th Cir.1982) (nine-month delay after entry of settlement was not reasonable); see generally *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988) (Rule 60(b)(6) motion must be made within "reasonable time").

■ Either of the grounds Judge Norgle cited would have been sufficient to support his decision not to grant this Rule 60(b)(6) motion. As the judge who had presided over the waning years of this lawsuit, he was in the best position to evaluate the settlement agreement itself and whether the Neubergs were entitled to checks before the attorneys' lien issue was resolved or not. He concluded that the defendants had tendered all they needed to, at least to avoid the extraordinary remedy of a Rule 60(b)(6) order. Indeed, Judge Norgle recognized that the plaintiffs were not really trying to reopen the dismissed suit, which would be the effect of a Rule 60(b)(6) order setting aside the final judgment. They wanted him to interpret the agreement, giving them the benefit of the $350,000 free and clear of liens. Judge Norgle noted, consistently with the Supreme Court's decision in *Kokkonen,* that a dispute over the interpretation of the settlement agreement is a legal matter distinct from the underlying litigation. See 511 U.S. at 382, 114 S.Ct. at 1677; *National Presto Industries, Inc. v. Dazey Corp.,* 107 F.3d 1576, 1583 (Fed.Cir.1997) (district court retains no inherent authority to enforce or interpret settlement contract); *Lucille v. City of Chicago,* 31 F.3d 546, 548–49 (7th Cir.1994) (federal court will enforce or retain jurisdiction over settlement agreement only to extent

that judgment expressly or implicitly incorporates such terms). As he said, the state courts remain open to the Neubergs if they genuinely believe the agreement has been breached, and (although we express no definitive opinion on this) the federal courts may be available too if diversity jurisdiction exists.

We conclude with a few words about the Neubergs' reluctance to deal with their former attorneys. If, as they claim, the former attorneys have no valid claims at all to the settlement proceeds, then Illinois Rule of Professional Conduct 1.5 strongly suggests that they would be under an ethical obligation to execute the releases or (which amounts to the same thing) to sign the checks on the Neubergs' behalf. Rule 1.5 governs fees, and it stipulates that fees must be reasonable. Plainly, collecting a fee that is not due under the agreement with the client would be unreasonable, at the very least. Under Illinois law, unprofessional conduct can affect an attorney's right to recover fees and in some ·cases may be a complete bar to recovery. See *Talley v. Alton Box Board Co.*, 37 Ill.App.2d 137, 185 N.E.2d 349, 353 (1962). If some or all of the former attorneys contest the Neubergs' position about the existence or amount of a fee lien, then the defendants' reluctance to become embroiled in the dispute is understandable, since the Illinois Attorneys Lien Act provides for enforcement of such liens by service of notice on, and suit against, the defendants. See 770 Ill. Comp. Stat. Ann. 5/1 (West 1997). We need say no more about that counterfactual supposition, however, since the Neubergs repeatedly argue in their appeal "[t]hat no attorney liens existed" and stress it as a factor showing that the district court abused its discretion. In any event, questions like that, as well as the more fundamental question whether this settlement agreement permitted the Neubergs to collect the full amount of the proceeds and litigate with their former lawyers (if necessary) later, or if it permitted the defendants to extricate themselves from this dispute by (1) waiting for releases, (2) issuing checks in the names of all possible payees, or (3) filing a federal interpleader action from which they could be dismissed, is a matter of interpretation of that agreement for another day.

We AFFIRM the judgment of the district court denying the Neubergs' motion under Rule 60(b)(6).