In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2365

Donald McCormick,

Plaintiff-Appellant,

v.

City of Chicago, et al.,

Defendants-Appellees.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 C 2028--Charles R. Norgle, Sr., Judge.


Argued June 6, 2000--Decided October 16, 2000


  Before Bauer, Manion, and Williams, Circuit Judges.

  Williams, Circuit Judge.  Donald McCormick sued
the City of Chicago, and two individual
defendants, Sergeant Richard Banaszkiewicz and
Dr. Jack Leong ("Individual Defendants") for
discrimination under 42 U.S.C. sec. 1983 and 42
U.S.C. sec. 1981. After allowing McCormick to
amend his complaint twice in order to allege
facts sufficient to show municipal liability, the
district court held a hearing and denied
McCormick the opportunity to amend his complaint
for a third time. Ultimately, the district court
dismissed McCormick's municipal liability claim.

  Following the dismissal of the claims against
the City, McCormick and the defendants attempted
to reach a settlement agreement as to the
remaining claims. In light of the settlement
negotiations, on June 30, 1998, the district
court dismissed the case with leave to reinstate
within 60 days. Although the parties reached an
agreement in principle, the Fraternal Order of
Police ("FOP"), whose consent was a condition of
the agreement, refused to agree to the
settlement. McCormick abandoned efforts to
renegotiate the settlement on November 18, 1998
and filed a motion to reinstate claims against
the Individual Defendants on December 11, 1998.
The court denied the motion to reinstate and
McCormick now appeals both the dismissal of his
municipal liability claim and the denial of his

motion to reinstate his claims against the Individual Defendants. For the reasons set forth below, we reverse in part and affirm in part.

I

   Donald McCormick was injured while on duty as a Chicago police officer when he slipped on the icy pavement and fell. At that time, Banaszkiewicz was McCormick's immediate supervisor. Despite the fact that McCormick filed an "injured on duty form," Banaszkiewicz, who is white, refused to authorize injured on duty status ("IOD status") for McCormick. McCormick asserts that the motivation for this refusal was Banaszkiewicz' racial hostility toward plaintiff, who is African-American. McCormick claims that at the time he was injured, Banaszkiewicz made it very clear that because McCormick was African-American, Banaszkiewicz did not believe McCormick's story about being injured on the job and that as McCormick's supervisor, he would do everything in his power to ensure that McCormick did not receive IOD status. In fact, McCormick reported that Banaszkiewicz even said to him, "I'll get your black ass off this job yet."

   McCormick remained off work for one month and returned briefly in June 1993, until he was informed by his physician that he was physically unable to work. He submitted his doctor's written recommendation to Dr. Leong, a police department physician, who rejected the recommendation and without performing any medical examination, refused to rate McCormick as unfit for duty. McCormick charges that Leong's refusal was also motivated by racial animus. Leong ordered McCormick back to work and "made assertions indicative of his general belief that African-American patrolmen were more likely to feign or exaggerate work related injuries." Specifically, Leong told McCormick, "You blacks are all the same. Listen, I'm going to have the department fire you for insubordination." When McCormick protested and reported his intent to file a grievance, Leong added, "You'll be fired first." According to McCormick, Leong never asserted a medical reason to support his refusal to rate McCormick unable to perform his duties.

   As a result of Banaszkiewicz' and Leong's actions,/1 McCormick ultimately resigned from the police force. Later that year, on October 29, 1993, McCormick requested reinstatement to the Chicago Police Department. The City granted his request, however McCormick was not reinstated to his former position. Consequently, McCormick lost all seniority and benefits which would have inured to him under the terms of his original contract with the department.

In his Second Amended Complaint, McCormick alleged that by maintaining an express policy against racial discrimination and not vigorously enforcing it, the City encouraged and condoned acts and omissions of its highest policy-making officers who have allowed "a widespread custom of allowing white police officers, in predominately white districts, to engage in individual acts of discrimination against African-Americans, without fear of vigorous and effective enforcement of City anti-discrimination policies." In particular, McCormick alleged that Banaszkiewicz engaged in a pattern of treating African-American officers worse than white officers and "denigrating, belittling, and mistreating African-American officers under his supervision while at the same time, not treating white police officers" similarly. He reported that on one occasion, Banaszkiewicz was caught by the watch commander engaging in acts of sabotage against equipment used by African-Americans and that despite repeated and well-publicized reports of racially motivated acts by Banaszkiewicz, the City allowed him to retain a supervisory postion and to harass and harm African-American officers, including McCormick. McCormick also claims that Banaszkiewicz' supervisors, the City Clerk, and other City officials knew about his conduct and that their failure to act served as further encouragement.

The procedural history of this litigation is complicated, but in no way unusual in a case of this nature. After permitting McCormick to amend his complaint for the third time, on October 29, 1997, the district judge concluded that McCormick had not alleged facts showing a municipal custom or practice of discrimination against African-American officers who were injured on duty and therefore dismissed McCormick's claims against the City. The court found that "McCormick [did] not plead facts demonstrating that the City was the moving force behind the alleged discrimination" and he "failed to come forward with facts establishing an 'affirmative link' between a discriminatory municipal policy and [one of Individual Defendants'] behavior." However, the district judge did offer McCormick, who was pro se at the time, the chance to file a third amended complaint, as long as he did so prior to November 21, 1997. The court informed McCormick that if he failed to submit his third amended complaint by that date, his claims against the City would be dismissed with prejudice and the court would enter judgment in the City's favor.

On January 5, 1998, McCormick, represented by legal counsel, filed a motion for leave to file

another amended complaint. He sought to add a paragraph which stated:

At all times the City of Chicago has afforded disparate treatment on account of race to its police officers claiming to have been injured on duty. The City has disapproved claims of African-American police officers for injury-on-duty status at a greater rate than the claims of similarly situated white officers. The difference in the approval rates for African-American and white police officers is so great as to give rise to an inference of intentional discrimination.

The district judge denied this motion./2 In ruling, the judge noted that "from the Court's perspective this is a tired, old case. And when it originally came before the Court, it appeared to be a relatively simple case for the Court to deal with. . . . This amendment would totally change the nature of the case, if the Court were to allow this amendment."

In the meantime, the Individual Defendants filed answers to McCormick's Second Amended Complaint, and the litigation proceeded as to the claims against them. By January, after some discovery, McCormick and the Individual Defendants were actively engaged in settlement discussions. The Individual Defendants initially reached a settlement agreement with McCormick, and on June 30, 1998, the district judge issued an order dismissing McCormick's case with leave to reinstate within sixty days. Under the terms of the agreement, McCormick was supposed to submit a letter noting the Fraternal Order of Police's ("FOP") consent to the settlement by July 30, 1998. McCormick missed this deadline and later informed the court that the FOP refused to approve the settlement. Therefore, the agreement was never finalized./3 However, instead of seeking reinstatement immediately, McCormick did not file a motion to reinstate until December 11, 1998; months after the deadline imposed by the court in June. After several filings on the subject, the district judge denied McCormick's motion to reinstate as both untimely and without merit.

II
A.  Motion to Dismiss

McCormick maintains that in dismissing his claims against the City, the district judge improperly applied a heightened pleading standard to his municipal liability claim. As an initial matter, the City contends that we need not even reach this issue. The City argues that because it entered into settlement negotiations concerning claims against both the City and Individual

Defendants, dismissal of the complaint in light of those negotiations covers both the municipal liability and individual liability claims. This argument misses the mark. The fact that the City was still a party to settlement negotiations does not necessarily mean that the court's June 30, 1998 order (dismissing with leave to reinstate), somehow included the municipal liability claim. That claim was dismissed by the court on October 29, 1997 and again on January 12, 1998 when the court denied plaintiff's motion to modify the October 29 order. Since the court entered a final judgment for defendants on March 5, 1999 and McCormick has filed a timely appeal, he may challenge all of the court's prior rulings, including the court's dismissal of his municipal liability claim. See Head v. Chicago Sch. Reform Bd. of Trustees, No. 99-3408, 2000 WL 1206482, at *2 (7th Cir. Aug. 25, 2000). We review the district judge's decision to grant a motion to dismiss de novo. See Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 625 (7th Cir. 1999).

The Supreme Court has made it very clear that federal courts must not apply a heightened pleading standard in civil rights cases alleging sec. 1983 municipal liability. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993). To survive a motion to dismiss, "a pleading must only contain enough to 'allow the court and the defendant to understand the gravamen of the plaintiff's complaint,'" Payton, 184 F.3d at 627 (citing Doherty v. City of Chicago, 75 F.3d 318, 326 (7th Cir. 1996)). The task for the court in these cases then is to determine exactly what is "enough."

To allege that a municipal policy has violated an individual's civil rights under sec. 1981 or sec. 1983, McCormick needed to allege that (1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority. See McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995). McCormick chose to rely upon the second of these three options.

According to McCormick, the City was aware of the discriminatory policy (as practiced by Individual Defendants) against African-Americans who were injured on the job. McCormick's pro se complaint contains various allegations against

the City. Most directly aimed at the City is McCormick's claim that the City encouraged and condoned acts and omissions of its highest policy-making officers who have allowed "a widespread custom of allowing white police officers, in predominately white districts, to engage in individual acts of discrimination against African-Americans, without fear of vigorous and effective enforcement of City anti-discrimination policies." In his submissions to the court, McCormick also cited two specific reasons he thinks the City should be held liable, (1) the City Clerk has been the subject of employment discrimination lawsuits and complaints and (2) Banaszkiewicz was caught tampering with another African-American officer's computer.

The district judge rejected McCormick's arguments and found the language in his complaint lacking. He concluded that McCormick's complaint included only "boilerplate allegations of a discriminatory municipal policy, entirely lacking in any factual support that a municipal policy does exist." In addition, the court specifically rejected McCormick's argument concerning Banaszkiewicz' tampering with computers as a single incident which merely shows that he "may have racial animus toward African-Americans," but does not indicate that City policymakers were aware of the officer's conduct and acquiesced.

Plaintiffs' counsel, the defense bar, and district courts continue to struggle with this and other courts' pronouncements as to exactly what a plaintiff bringing a municipal liability suit must plead to survive a motion to dismiss-- and with reason. In Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995), we held that a plaintiff "need not plead facts; he can plead conclusions." This of course suggests a clear rule in favor of notice pleading. Such a rule comports with Leatherman, 507 U.S. at 164, but may appear confusing in light of our holdings in other cases like Kyle v. Morton High School, 144 F.3d 448, 455 (7th Cir. 1998). In Kyle, we considered the language and the facts provided in the plaintiff's complaint and concluded that the plaintiff could not state a claim by simply attaching a "'bare conclusion to the facts he narrates.'" Id. (internal citation omitted).

Here, there is no question that McCormick has included in his complaint a number of conclusions designed to get him over the pleading bar for his municipal liability claim. The smattering of phrases like "highest policymaking officers" and "widespread custom" throughout McCormick's complaint is a common practice designed to ensure that the complaint will withstand scrutiny under liberal notice pleading. Some would assert that

the inclusion of this language should be "enough." Others suggest that more is needed; that the facts included in the complaint must lead to the legal conclusions drawn. We believe that it is the former view, and not the latter, that Leatherman and its progeny support.

In Leatherman, the Supreme Court reminded us that the Federal Rules of Civil Procedure, as currently formulated, do not permit the courts to dismiss sec. 1983 municipal liability claims for lack of factual specificity under Rule 12(b)(6): "[F]ederal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." Leatherman, 507 U.S. at 168-69. This court in Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998), made it rather plain what it takes to survive a motion to dismiss and announced that we do not sanction a heightened pleading standard of any sort in discrimination cases. On more than one occasion, we have held that "plaintiffs need not 'allege all, or any of the facts logically entailed by the claim . . . A plaintiff does not have to plead evidence. . . . [A] complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." Payton, 184 F.3d at 626-27 (citing Bennett, 153 F.3d at 518) (internal citation omitted).

This standard is to be vigilantly applied when the plaintiff is acting pro se and has drafted his own complaint, as is the case here. It is the well-settled law of this circuit that pro se complaints are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers. See Wilson v. Civil Town of Clayton, Ind., 839 F.2d 375, 378 (7th Cir. 1988); Sizemore v. Williford, 829 F.2d 608, 610 (7th Cir. 1987); Caldwell v. Miller, 790 F.2d 589, 595 (7th Cir. 1986). Therefore, a pro se civil rights complaint may only be dismissed if it is beyond doubt that there is no set of facts under which the plaintiff could obtain relief. See Shango v. Jurich, 681 F.2d 1091, 1103 (7th Cir. 1982).

Of course, where a plaintiff alleges facts that establish that a defendant is entitled to prevail on a motion to dismiss, the court may find that the plaintiff has plead himself out of court. Bennett, 153 F.3d at 519. That is not the case here. McCormick's complaint does not leave out operative facts which form the basis of his claim as the plaintiff did in McTigue, 60 F.3d at 382 (7th Cir. 1995) (finding complaint deficient for its failure to include a factual basis describing the bias plaintiff alleged) or in Kyle, 144 F.3d

at 457 (dismissing complaint where plaintiff simply recited rumor that he was terminated for "political and advocacy reasons"). In those cases, the plaintiffs left out facts necessary to give the defendants a complete understanding of the claims made against them. The defendants in those cases had no notice of the crux of the plaintiff's charges. The factual cause of McCormick's claim is clear and the strong language of Bennett and the guidance offered in cases like Wilson and Sizemore indicate that McCormick's case against the City should not have been dismissed.

The language contained in McCormick's second amended complaint, while conclusory, is sufficient to put the City on notice of his claim against it. The conclusions are buttressed by facts alleging wrongdoing by the City, as required by Monell v. Department of Social Services, 436 U.S. 658, 690 (1978). McCormick alleges that the City "encouraged and condoned acts [Banaszkiewicz' and Dr. Leong's discriminatory treatment of him] and omissions [failing to provide a process for McCormick to appeal those decisions or to stop Banaszkiewicz from discriminating against African-Americans] of its highest level policy-making officers" which resulted in a "widespread custom of allowing white police officers" to discriminate against African-American officers without fear of punishment. He also claims that the City (specifically the City Clerk) ignored the "well publicized racially motivated acts" of McCormick's supervisor Banaszkiewicz. If true, as we must assume these facts are, we find nothing in the law to suggest that McCormick would not have a valid municipal liability claim against the City./4

Taking into account the liberal pleading standard for pro se plaintiffs, we are convinced that the district judge erred in dismissing McCormick's municipal liability claims in his second amended complaint. Contrary to the district judge's opinion, McCormick does not need to plead facts "demonstrating that the City was the moving force behind the alleged discrimination." In fact, the Federal Rules of Civil Procedure provide that "malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). McCormick alleged that the City knew about Banaszkiewicz' and Dr. Leong's discriminatory actions and encouraged it. In announcing its decision, the district judge relied on cases resolved by a jury verdict, not at the motion to dismiss stage./5 In those cases, plaintiff's burden was to prove by a preponderance of the evidence that the City was liable. Here,

McCormick's burden was simply to allege facts that would give the City notice of his municipal liability claim. He met that burden and should have been permitted to proceed against the City. Therefore, we find that the district court erred in granting the City's motion to dismiss McCormick's municipal liability claim.

B. Motion to Reinstate

Next McCormick argues that the district court erred when it denied his motion to reinstate. McCormick claims that he did not give up attempts to renegotiate the settlement until November 18, 1998, only two weeks before he filed his motion to reinstate. However, the City claims McCormick knew that he would be unable to meet the conditions set forth in the agreement and that settlement negotiations were in trouble on July 30, 1998, when he was unable to obtain the consent of the FOP. As such, McCormick had ample opportunity to seek reinstatement of the case within the sixty days allotted or to ask for an extension of time to reinstate.

The district judge agreed with the City and found that McCormick's motion to reinstate was both inexcusable and untimely. He noted:

Here plaintiff knew on July 30th, that there was a problem because he did not comply with the agreement. Yet, he made no effort to take advantage of the court's leave to reinstate. . . . Considering the amount of time McCormick had to reinstate after he became aware of the problem with the settlement, and the resulting prejudice to the remaining individual defendants . . . the court finds that McCormick failed to file within a reasonable time.

(Order, Mar. 2, 1999.) Since McCormick appeals only the denial of the motion to reinstate his case against the Individual Defendants and not the court's dismissal of his claims against them, our review is "strictly limited to determining whether the district court's denial of the Rule 60(b) motion constituted an abuse of discretion." Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 607 (7th Cir. 1986)./6 A court has abused its discretion when "no reasonable person could agree with the district court." Nelson v. City Colleges of Chicago, 962 F.2d 754, 755 (7th Cir. 1992).

We believe the district judge acted reasonably. Rule 60(b) permits the court to relieve a party from an order on the grounds of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud or "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). It is very well established

that Rule 60(b) relief is "an extraordinary remedy and is granted only in exceptional circumstances," Dickerson v. Board of Educ. of Ford Heights, Ill., 32 F.3d 1114, 1116 (7th Cir. 1994) (internal citation omitted), and we have described a court's decision not to reinstate a case under Rule 60(b) as "discretion piled on discretion." Tolliver v. Northrop Corp., 786 F.2d 316, 319 (7th Cir. 1986). Therefore, we must let the district court decision not to reinstate stand unless we find that there was a substantial danger that dismissal of plaintiff's claims was fundamentally unjust. Dickerson, 32 F.3d at 1117.

The City says that the reason McCormick offers as an excuse for seeking reinstatement three months after the deadline, mutual mistake, is insufficient. We agree and find unavailing McCormick's first argument that both he and the City mistakenly believed that the FOP would consent to the agreement and that therefore the court should have granted Rule 60(b) relief. When McCormick agreed to condition enforcement of the settlement agreement on getting consent from the FOP, he knew that there was a possibility, however slight, that the FOP would not acquiesce. Despite that risk, McCormick decided to forgo the risks and costs that a trial would involve, have his case dismissed and enter into a settlement agreement.

There was no mistake involved here. If both parties had been 100 percent sure that the FOP would consent to the agreement, the clause conditioning the settlement on that consent would have been neither necessary nor even considered. Instead, the parties saw the need to obtain FOP consent and conditioned the settlement on getting that consent. The very fact that they did this suggests that both parties had to know that the possibility existed that the FOP would withhold its consent. We do not consider it a mistake that neither party sought to include a clause that would save the settlement agreement in the event this happened (and if anything, certainly not a mutual mistake). Given that implementation of the settlement was dependent upon the FOP giving its consent, McCormick's attorney had a particularly strong incentive to make sure that his client was protected in the event the FOP decided it could not agree that McCormick's seniority should be restored. This court has held before that "neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." Kagan, 795 F.2d at 607 (citing Ben Sager Chem. Int'l v. E. Targosz & Co., 560 F.2d 805, 809 (7th Cir. 1977).

We agree with the Second Circuit that "when a party makes a deliberate, strategic choice to

settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." United States v. Bank of New York, 14 F.3d 756, 759 (2d Cir. 1994) (affirming district court's finding that plaintiff's erroneous interpretation of a statute did not constitute mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)). Here, McCormick characterizes the FOP's refusal to consent as an "unexpected development." That may be true, but this does not entitle McCormick to Rule 60(b) relief.

Equally unpersuasive is McCormick's suggestion that the district judge erred in finding his motion untimely. While complete repudiation of a settlement agreement would suffice to justify Rule 60(b) relief, that is not the case presented here. In this case, the settlement agreement fell apart because an express condition of the agreement was not met. And, like the plaintiffs in Neuberg v. Michael Reese Hosp. Found., 123 F.3d 951, 954 (7th Cir. 1997), McCormick knew that the FOP would not consent to the settlement agreement and that he and the City had reached an impasse long before he sought reinstatement. In Neuberg, the plaintiffs waited 21 months (admittedly longer than McCormick waited here) before filing a motion to reopen the case even though they knew of the stalemate between the parties./7 Neuberg, 123 F.3d at 955. While the facts differ slightly in this case (the district judge in Neuberg did not give plaintiffs 60 days to reinstate the case after the parties reported having reached a settlement agreement), we think the principle is the same.

The district court offered McCormick a sizeable window of opportunity to reinstate his case if he thought the settlement agreement was in jeopardy. Rather than reinstate the case and continue negotiations under the district judge's watchful eye, he chose to wait to take action until well after the time allotted had passed. The district court decided that McCormick's excuse that his counsel did not abandon efforts to renegotiate the settlement until December was just not good enough. In light of the facts and the procedural history of this litigation, this was not an unreasonable conclusion to reach. A conscientious attorney would have sought reinstatement as soon as she learned that a condition of the settlement agreement would not be met, or at least as soon as she realized that the time provided for reinstatement was about to elapse. McCormick's counsel failed to do this. As such, given the amount of time that elapsed before McCormick sought to reinstate the case, it was not unreasonable to hold that his motion was untimely.

Therefore, we find that the district judge did not err in denying McCormick's motion to reinstate.

III

For all of the reasons set forth above, we REVERSE the district court's decision to dismiss McCormick's municipal liability claim, REMAND that claim to the district court for further proceedings, and AFFIRM the district court's decision denying McCormick's motion to reinstate.

/1 McCormick asserts that because Leong's medical judgment and refusal to give McCormick IOD status was granted so much deference, it was in essence unreviewable. As such, McCormick considers Leong a final decision-maker. He also states that because the City did not provide a means for him to appeal Banaszkiewicz' decision jeopardizing McCormick's health and safety (presumably by making him remain on the job), Banaszkiewicz should be considered a final decision-maker as well.

/2 On December 4, 1997, McCormick's new attorney informed the court that he had just learned about the October order dismissing McCormick's suit and he filed a motion to modify the order seeking more time to amend the complaint. The court initially took the motion under advisement but ultimately denied McCormick's motion to modify the order at the same time he denied McCormick's motion for leave to amend.

/3 The proposed settlement agreement contained a provision requiring consent of the FOP because one of the remedies McCormick sought was an adjustment to his seniority and the FOP's collective bargaining agreement governs adjustments to seniority. The City argued that without the FOP's consent, there is no way to restore McCormick's seniority and provide McCormick the remedy he was seeking.

/4 The district court suggests that McCormick's inclusion of facts describing the single incident involving Banaszkiewicz' tampering with an African-American co-worker's computer and the City Clerk's receipt of other complaints of discrimination somehow works to defeat his claim. On the contrary, the language in McCormick's complaint, as we have indicated above, expressly alleges a widespread custom of discrimination by the City. McCormick did not defeat his claim simply because he referenced these examples.

/5 See Hubert v. Wilhelm, 120 F.3d 648, 656 (7th

Cir. 1997) (affirming jury verdict and district court's denial of post-verdict motion for judgment as a matter of law); McNabola v. Chicago Transit Auth., 10 F.3d 501, 511 (7th Cir. 1993) (affirming jury verdict).

/6 McCormick argues that Rule 60(b) does not apply to this case because he sought reinstatement before the court's Rule 58 final judgment was entered. Rule 60(b) permits the court to relieve a party from "a final judgment, order or proceeding." There is nothing in the law to suggest that Rule 60(b) applies only to decisions rendered final by entry of a Rule 58 judgment. By its terms, it applies to final orders and final proceedings. In fact, in Otis v. City of Chicago, 29 F.3d 1159, 1165 (7th Cir. 1994), we held that in cases where the district judge has entered a conditional dismissal in light of a reported settlement, "once the time to satisfy the condition has expired, the order is 'final' by any standard other than one making the entry of a Rule 58 judgment indispensable."

/7 This court has held that a nine-month delay in seeking reinstatement of a three year-old case after entry of settlement was not reasonable. See Lyles v. Commercial Lovelace Motor Freight, Inc., 684 F.2d 501, 504 (7th Cir. 1982).