No. 03-057

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 358N

STATE OF MONTANA,

   Plaintiff and Respondent,

   v.

WADE PATRICK WRIGHT,

   Defendant and Appellant.


APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause Nos. DC-94-158(B) and DC-97-004(B),
The Honorable Stewart E. Stadler and The Honorable Katherine R. Curtis, Judges presiding.


COUNSEL OF RECORD:

   For Appellant:

      Wade Patrick Wright (pro se), Deer Lodge, Montana

   For Respondent:

      Hon. Mike McGrath, Attorney General; Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

      Ed Corrigan, County Attorney, Kalispell, Montana


                           Submitted on Briefs:  July 10, 2003

                           Decided:  December 18, 2003

Filed:


_____
                  Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. The decision shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of non-citable cases issued by this Court.

¶2     Wade Patrick Wright (Wright) appeals from the judgment entered by the Eleventh Judicial District Court, Flathead County, on revocation of suspended sentences for criminal possession of dangerous drugs with intent to sell, a felony, and criminal possession of dangerous drugs, a felony, for violation of terms and conditions of the suspended sentences. We affirm, in part, and reverse, in part.

## BACKGROUND

¶3     On August 22, 1994, the State charged Wright by Information in Flathead County District Court (Flathead Court) with criminal possession of dangerous drugs with intent to sell, a felony, in violation of § 45-9-103(1), MCA.  He pled guilty to the charge, and on November 29, 1994, the Flathead Court sentenced Wright to Montana State Prison (MSP) for twenty years, suspending his entire sentence conditioned upon numerous requirements.

¶4     Wright violated some conditions of his suspended sentence when authorities found drugs in his residence during a probationary search, and on December 13, 1996, the Flathead Court revoked his suspended sentence and imposed a new sentence of twenty years in MSP, with ten years suspended for his 1994 drug offense.  Wright was then transferred to MSP

2

upon sentencing.

¶5     On January 6, 1997, the State charged Wright by Information in the Flathead Court with criminal possession of dangerous drugs, a felony, in violation of § 45-9-102(1), MCA, as a result of the probationary search. After Wright pled guilty to the 1997 charges on January 16, 1997, the Flathead Court sentenced him to five years of a suspended sentence consecutive to his 1994 existing drug offense sentence.

¶6     MSP released Wright on parole in December 1998. He violated numerous conditions of his parole throughout the year 2000. On December 5, 2000, the State charged Wright by Information in Cascade County District Court (Cascade Court) with burglary and theft, both felonies. On January 18, 2001, the State filed a petition in Flathead Court to revoke the suspended sentences of Wright's previous drug charges, alleging Wright had not abided by regulations and requirements of his suspended sentence by possessing intoxicants, failing to pay restitution, failing to attend AA/NA meetings on a daily basis, failing to work towards completion of community service requirements, and generally not behaving as a law abiding citizen as illustrated by his arrest for burglary and felony theft in Cascade County. The Flathead Court issued a bench warrant for Wright's arrest on January 22, 2001. On February 7, 2001, the Teton County Sheriff's Department arrested Wright in Choteau, Montana, pursuant to both the Cascade County warrant and the Flathead County warrant. He briefly appeared in Choteau on both warrants before he was delivered to Cascade County's custody for arraignment. Due to the fact that he did not post bail and remained in Cascade County custody, Flathead County did not apprehend Wright nor begin proceedings for sentence

3

revocation.

¶7    On May 7, 2001, in a plea agreement, Wright pled guilty to burglary in Cascade Court and the State dismissed the theft charge. On July 30, 2001, the Cascade Court sentenced Wright to Department of Corrections for ten years, with five years suspended to run concurrently with any other sentence that Wright was presently serving. The Cascade Court gave Wright 169 days of credit for time served and sent him to MSP.

¶8    Upon arrival at MSP in August 2001, Wright claims that he contacted the Institutional Parole and Probation Officer to determine if there was anything pending on the revocation of his suspended sentence for his drug charges and was told there was nothing. Additionally, he claims he contacted his attorney from the drug cases to determine the status of his sentence revocation and was told that there was nothing that his attorney could do for him. Finally, in a letter dated April 24, 2002, Wright requested a status report on his January 22, 2001, Flathead County bench warrant for sentence revocation from the Clerk of the Court for Flathead County. In a letter dated May 23, 2002, Peg Allison, Clerk of the Court, responded that she did not know the status of the warrant and she forwarded a copy of his letter to the County Attorney's Office.

¶9    The Flathead Court scheduled a revocation hearing for June 27, 2002. Flathead County transported Wright and detained him in Flathead County Detention Center until his revocation hearing. During his revocation hearing on July 11, 2002, Wright admitted to violating conditions of his suspended sentences, and the Flathead Court revoked his sentences by sentencing him to MSP for fifteen years, and a consecutive sentence for five

4

years suspended for both charges. The Flathead Court gave Wright sixteen days credit for time served from June 27, 2002, to July 11, 2002.

¶10    On August 5, 2002, Wright moved to amend the Flathead Court judgment to give him credit for time served, in accordance with § 46-18-203, MCA, from February 7, 2001, to July 11, 2002, specifically 516 days. The State responded that Wright was not given the correct credit for time served during the original proceedings from December 14, 1996, through January 16, 1997, and conceded that Wright was entitled to forty-one days of credit for time served. However, the State requested that the motion be denied because Wright was not entitled to credit for time served during his suggested dates, because this was time served for Wright's Cascade County charge and was properly credited towards that sentence. Agreeing with the State, the Flathead Court denied Wright's motion to amend judgment, yet credited him with the forty-one days for time served as suggested by the State. Wright appeals from this order. We consider the following issues on appeal:

¶11    1. Did the Flathead Court err when it unduly delayed Wright's revocation hearing for seventeen months from the time it issued a warrant to the time it held the revocation hearing?

¶12    2. Did the Flathead Court err when it denied Wright credit for time served from February 7, 2001, to July 11, 2002, awaiting a revocation hearing?

¶13    3. Did Cascade Court err when it sentenced Wright concurrently with a prior suspended sentence before the Flathead Court held a revocation hearing regarding such suspended sentence?

5

STANDARD OF REVIEW

¶14     This Court reviews a district court's sentence for legality. *State v. Kime*, 2002 MT 38, ¶ 6, 308 Mont. 341, ¶ 6, 43 P.3d 290, ¶ 6.  The standard of review for the legality of a sentence is limited to determining whether the sentencing court abused its discretion. *State v. Meeks*, 2002 MT 246, ¶ 15, 312 Mont. 126, ¶ 15, 58 P.3d 167, ¶ 15.

DISCUSSION

ISSUE ONE

¶15     Did the Flathead Court err when it unduly delayed Wright's revocation hearing for seventeen months from the time it issued a warrant to the time it held the revocation hearing?

¶16     As a preliminary matter, the State contends that the undue delay issue is not properly before this Court, because Wright did not raise it in the Flathead Court either in his motion to amend judgment or his April 24, 2002, status letter.  Conversely, relying upon *McCormick v. City of Chicago* (7th Cir. 2000), 230 F.3d 319, 325, Wright asserts that as a *pro se* appellant, his pleadings should be "liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers."  He also suggests that courts go to "particular pains" to protect *pro se* litigants from manifest injustice, thus this Court should consider his undue delay claim.  We agree with the State and decline to address this issue for the following reason.

¶17     It is well settled that this Court will not address an issue raised for the first time on appeal. *State v. Martinez*, 2003 MT 65, ¶ 17, 314 Mont. 434, ¶ 17, 67 P.3d 207, ¶ 17.  The Flathead Court proceedings indicate no record of Wright ever challenging the State's failure

6

to hold his revocation hearing within a reasonable time. While the record indicates that Wright attempted informally to resolve his revocation warrant, his letters and alleged contacts with his attorney do not preserve this issue for purposes of appeal. Furthermore, Wright's motion to amend judgment only contests the number of days credited for time served and does not specifically object to the delay in holding his revocation hearing. Consequently, the record does not indicate that Wright raised this issue before the Flathead Court. Therefore, we do not address Wright's undue delay claim on its merits for the reason that it was not raised in the District Court.

ISSUE TWO

¶18 Did the Flathead Court err when it denied Wright credit for time served from February 7, 2001, to July 11, 2002, awaiting a revocation hearing?

¶19 Wright moved to amend judgment alleging he should have been credited approximately 516 days for time served towards his Flathead County sentence while incarcerated from February 7, 2001, until July 11, 2002. The Flathead Court denied his motion on the grounds that Wright was awaiting disposition of another case from Cascade County and was subsequently serving time towards his Cascade County sentence during those 516 days. Wright contends that the Flathead Court abused its discretion.

¶20 Both Flathead County and Cascade County issued warrants for Wright's arrest on two different charges before Teton County apprehended him on February 7, 2001. He appeared before Teton County on both warrants. Cascade County ultimately detained Wright for the burglary and felony theft charge, and by not posting bail, Wright remained in their custody

7

from February 7, 2001, until his sentencing order on July 30, 2001. Next, Wright was in MSP custody until Flathead County retrieved him for the revocation hearing, where he remained in Flathead County's custody for a few weeks, and later returned to MSP to finish serving his sentences.

¶21 Wright contends he is entitled to credit for time served towards his Flathead County sentence for the entire time he was in custody prior to his revocation hearing on his alleged Flathead County suspended sentence violation. The State argues that Wright was not entitled to credit for time served against the Flathead County sentences, because he was in Cascade County detention for burglary prosecution and later in prison to serve the burglary sentence, and thereby in custody for a separate offense not directly related to the offense for which Flathead County ultimately imposed its sentence. It asserts that Wright was only entitled to the credit for time served towards the Cascade County burglary offense and the Cascade Court properly granted him 169 days of credit.

¶22 We disagree with the State. Section 46-18-403(1), MCA, states in pertinent part:

> Any person incarcerated on a bailable offense and against whom a judgment of imprisonment is rendered must be allowed credit for each day of incarceration prior to or after conviction, except that the time allowed as a credit may not exceed the term of the prison sentence rendered.

We have previously held that "pursuant to § 46-18-403(1), MCA, a defendant's sentence may be credited with the time he or she was incarcerated only if that incarceration was *directly related* to the offense for which the sentence is imposed." *Kime*, ¶ 16 (emphasis added).

¶23 In *Kime*, Gallatin County arrested the defendant on felony theft charges, among

8

others, and after appearing before the court, Kime did not post bail and remained incarcerated. *Kime*, ¶ 3. At the time of his arrest, Kime was participating in a supervised release program for a prior felony assault sentence. *Kime*, ¶ 4. A week after his arrest, the Department of Corrections removed Kime from Gallatin County's custody and transferred him to MSP because he violated the conditions of his supervised release. *Kime*, ¶ 4. Kime pled guilty to the Gallatin County charges and requested credit for time served towards his Gallatin County sentence from his arrest date to the date of sentencing. *Kime*, ¶ 5. The District Court only credited him for the time he was in Gallatin County custody because the time spent in MSP was credited towards his prior conviction. *Kime*, ¶ 5. In concluding that the District Court correctly refused to credit Kime's sentence, this Court found that Kime's incarceration in MSP for the time period between the initial Gallatin County charge and disposition of that charge was not directly related to the Gallatin County charge, but rather it was attributable to his prior felony conviction. *Kime*, ¶ 16. We pointed out that once Kime was removed to MSP, he was no longer incarcerated on a bailable offense. *Kime*, ¶ 14.

¶24 Here, Cascade County charged Wright with burglary and felony theft and issued a warrant for his arrest. At the same time, Flathead County issued a warrant for Wright's arrest for violating the conditions of his suspended sentence by consuming intoxicants, failing to make orderly payments towards his fines and fees, failing to attend AA/NA meetings, failing to complete 100 hours of community service, and allegedly failing to remain law abiding as illustrated by his Cascade County burglary charge. Teton County

apprehended him on both warrants and he remained in Cascade County custody until his transfer to MSP.

¶25    We conclude that the time Wright remained in Cascade County custody and subsequent prison time is directly related to both the Cascade County offense and the Flathead County revocation proceeding. In *Kime*, the Department of Corrections took Kime out of Gallatin County custody before resolving his felony theft charges to serve time towards a previous sentence, thus Kime was not eligible for bail. Kime was not eligible for any credit for time served towards his Gallatin County offense because that time was being credited towards a prior sentence. Conversely, in the case at hand, both the Flathead County revocation proceeding and the Cascade County charges were bailable offenses and Wright remained in Cascade County's custody while awaiting resolution of his Cascade County charge and Flathead County revocation proceeding. Furthermore, the sentence imposed in Cascade County was to run concurrently with any sentence he was serving at that time, and he was then transferred to MSP and still awaited disposition of his Flathead revocation proceeding.

¶26    Most importantly, in this case, the State waited seventeen months to hold the revocation hearing after serving Wright with a bench warrant from Flathead County. Had Wright been brought to Flathead County in a timely fashion, his Flathead sentence would have been timely revoked and he would have been immediately returned to MSP where he would have continued to serve time on both sentences for which he would have earned credit. It would be inherently unfair to deny Wright credit for the period he was incarcerated

10

at MSP because the State was tardy in transporting him to Flathead for his revocation hearing. Also, as previously mentioned, Wright's Cascade sentence specifically provided that it was to be concurrent with any other sentence he was serving. Therefore, the time Wright spent in Cascade County custody and subsequent time in prison was directly related to his Flathead County proceeding.

¶27     Considering *Kime,* the above statutory provision and the unique facts of this case, we conclude that Wright was entitled to credit for the time served towards his Flathead County sentence, because the Cascade County incarceration and subsequent prison time was directly related both to his Cascade County burglary charge and his Flathead County charge for violation of his suspended sentence. We conclude that the Flathead Court abused its discretion by refusing to credit Wright for the time served while awaiting his revocation hearing. As such, we reverse and order the Flathead Court to credit Wright for 516 days while in custody awaiting disposition of his violation of suspended sentence charge.

ISSUE THREE

¶28     Did the Cascade Court err when it sentenced Wright concurrently with a prior suspended sentence before the Flathead Court held a revocation hearing regarding such suspended sentence?

¶29     Wright argues that the Cascade Court should not have sentenced him concurrently with his Flathead County sentence because the Flathead County sentence was the controlling sentence. He relies upon *State v. McGuire* (1993), 260 Mont. 386, 860 P.2d 148, where this Court found that the District Court "was without authority to order McGuire to serve his

11

term of incarceration consecutive to another sentence not yet imposed." *McGuire*, 260 Mont. at 388, 860 P.2d at 149-50. The State correctly points out that Wright never raised this claim challenging the legality of the Cascade County burglary sentence in the Flathead Court revocation proceedings, therefore the claim is barred. Thus, we choose not to address this issue on appeal.

¶30     Therefore, we affirm Issues I and III, but reverse Issue II and order Flathead Court to credit Wright with 516 days for time served towards his drug sentences.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

Justice Jim Rice dissenting.

¶31    I dissent. The Court's primary holding is irreconcilable with our decision in *State v. Kime*, 2002 MT 38, 308 Mont. 341, 43 P.3d 290.

¶32    I concur with a minor part of the holding, that being the granting of credit against Wright's Flathead County sentence for the jail time he served in Teton and Cascade Counties after arrest on the Flathead and Cascade County arrest warrants. This incarceration was initiated by two warrants, was "directly related" to both offenses, which were both bailable, and Wright would have "been released from custody had he . . . been able to post bail," thus fulfilling the requirements we set forth in *Kime*. *Kime*, ¶ 15. The Court's logic in distinguishing *Kime*–that Wright was serving two bailable offenses (¶ 25)–is correct, but applies only to Wright's county incarceration. The same is not true for the time served by Wright at Montana State Prison.

¶33    Following receipt of his Cascade County sentence, Wright was transferred from the county facility to the state prison to serve that sentence. At that point, his incarceration was no longer "directly related" to his Flathead County proceeding. It was not the Flathead County proceeding which took him to the prison. He was taken there for one purpose: execution of his Cascade County sentence–precisely what occurred in *Kime*.

¶34    At that point, Wright was *not* being held on two bailable offenses. Wright could have posted bail on the Flathead County proceeding, but that would not have secured his release from the prison. He was no longer eligible for release, regardless of the status of his Flathead County proceeding. Thus, our holding in *Kime* regarding the purpose of § 46-18-

13

403(1), MCA, is precisely applicable: "[t]hat purpose is not served by crediting a defendant's sentence for time served where the defendant would not have been released from custody had he or she been able to post bail in any event as a result of being held on a sentence related to an earlier offense." *Kime*, ¶ 15.

¶35 The Court also premises its conclusion on Flathead County's seventeen month delay in holding a revocation hearing (¶ 26). However, the statute does not grant credit for time served based upon an assessment of equities. Although the delay was unfortunate and would have subjected the Flathead County proceeding to a challenge for failing to act "without unnecessary delay," § 46-18-203(4), MCA, it did not create a credit on a sentence that the statute would not have otherwise provided. Further, the fact that Wright's sentences were ordered to run concurrently, referenced by the Court in ¶ 25, bears no relevance to Wright's eligibility for credit under the statute.

¶36 I dissent.


/S/ JIM RICE

14