**CONFEDERATE MEMORIAL ASSOCIATION, INC., et al., Appellants**

v.

**UNITED DAUGHTERS OF the CONFEDERACY, Robert E. Lee Chapter, et al., Appellees.**

No. 92–CV–53.

District of Columbia Court of Appeals.

Argued May 19, 1993.

Decided Aug. 12, 1993.

David J. Bartone, Washington, DC, for appellants.

Nicholas G. Karambelas, with whom Herbert N. Harmon, Washington, DC, was on the brief, for appellees.

Before TERRY and FARRELL, Associate Judges, and MACK, Senior Judge.

TERRY, Associate Judge:

This is an appeal from an order granting appellees' motion to compel compliance with a settlement agreement. Appellants contend that the trial court lacked jurisdiction to enter the order because the terms of the settlement agreement were not incorporated into an order of the court at the time of the settlement. Appellants argue further that, even if the trial court did have jurisdiction to enforce the settlement agreement, the motion should have been denied because material terms of that agreement were breached by appellees. We affirm.

I

Appellants are the Confederate Memorial Association (CMA), a non-profit corporation

organized for the purpose of "promoting southern culture and honoring Confederate heritage," and its president and board chairman, John E. Hurley. Appellees are three other organizations formed for similar purposes. CMA owns a building in the District of Columbia known as Confederate Memorial Hall ("the Hall") which has been used jointly by appellant and appellee organizations for more than fifty years as a meeting place and museum. In June 1988 appellees filed this suit to enjoin appellants from excluding them from the Hall or restricting their use of it. They also alleged in their complaint that appellants had failed to preserve certain unidentified "art works and furniture" kept at the Hall, failed to maintain the Hall itself, and improperly removed members of the appellee organizations from CMA's board of trustees. In addition, the complaint alleged certain financial irregularities by Mr. Hurley and sought his removal as chairman of the board of CMA. Appellees' motion for a temporary restraining order was granted shortly after the complaint was filed, followed a few weeks later by a preliminary injunction.

A hearing on appellees' motion for a permanent injunction was begun in March 1990 before Judge Rufus King. On the fourth day of this hearing, the parties decided to settle. The terms of their settlement agreement were read into the record, and both parties agreed to them on the record; the hearing was accordingly brought to an end. In the settlement agreement the parties agreed to share the use of the Hall, to identify the owners of certain historical artifacts kept at the Hall, and to add persons from appellee organizations to the CMA board of trustees. In addition, appellees agreed to acknowledge in writing that there was no evidence of financial irregularities involving Mr. Hurley. The agreement also provided for an exchange of correspondence to resolve the details of certain aspects of the settlement, e.g., the dates on which appellees would be entitled to use the Hall, the names of the persons who would sit on the CMA board, and the language of the letter exonerating Mr. Hurley (collectively, the "Open Items"). Unfortunately, the parties' relationship soon became acrimonious again, and the Open Items were not resolved.

The parties returned to court on December 5, 1990, on appellees' motion to compel compliance with the settlement agreement. Each side charged that the other had failed to attempt a good faith resolution of the Open Items. Judge King patiently elicited from each party a list of things remaining to be done by the other party. He then ordered the parties to do what their adversaries claimed had not been done,[1] and told them that if they failed to comply, he would stay the suit and let them litigate one another into oblivion in a second action filed by appellants against appellees in federal court.[2]

Appellees sent appellants their specific proposals concerning the Open Items in a letter dated December 17, 1990. Appellants responded by letter on January 14, 1991, informing appellees that, for various reasons, they considered the settlement agreement an unenforceable nullity, and therefore refused to participate in further efforts to resolve the Open Items. Consequently, on January 31 appellees filed a new motion in the trial court to compel appellants' compliance with the December 5 order and the terms of the settlement

---

1. Appellants contend that no order resulted from this hearing. Although the record contains no written order, a transcript of the hearing is in the record and contains what is in effect an oral order. The relevant docket entry for December 5 shows an "ORDER GRANTING motion to COMPEL compliance with a settlement agreement," the details of which are then set forth. As Judge Urbina later found, Judge King unequivocally instructed the parties to submit proposals to each other to resolve the Open Items within fifteen days from the date of the hearing. Thus the parties were told—not asked—to accomplish specific tasks within a specific amount of time, and were warned that failure to do so would result in court action.

2. This second suit was filed by appellants in the United States District Court for the District of Columbia. That court later dismissed appellants' complaint with prejudice, but on appeal the dismissal was affirmed in part and vacated in part. *Confederate Memorial Ass'n v. Hines*, 301 U.S.App.D.C. 395, 995 F.2d 295 (1993).

agreement. That motion was granted by Judge Urbina [3] in an order filed December 20, 1991. In that order the judge found that appellants had failed to comply not only with the terms of the settlement agreement but also with Judge King's December 5 order, which had directed the parties to submit the specific proposals required under the settlement agreement concerning the Open Items. Judge Urbina further found that appellees had complied with Judge King's order. From the December 20 order appellants bring this appeal.

## II

■ It is settled law in the District of Columbia—and everywhere else, for that matter—that trial courts have the power to enforce settlement agreements in cases pending before them. *Autera v. Robinson*, 136 U.S.App.D.C. 216, 219, 419 F.2d 1197, 1200 (1969) (citing cases); [4] *accord, e.g., Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987) (citing *Autera*); *Mid–South Towing Co. v. Har–Win, Inc.*, 733 F.2d 386, 390 (5th Cir.1984) (same); *Dankese v. Defense Logistics Agency*, 693 F.2d 13, 16 (1st Cir. 1982) (same); *Wiltgen v. Hartford Accident & Indemnity Co.*, 634 F.2d 398, 400 (8th Cir.1980) (same); *Fairfax Countywide Citizens Ass'n v. County of Fairfax*, 571 F.2d 1299, 1304 (4th Cir.) (same, collecting cases), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978); *Kukla v. National Distillers Products Co.*, 483 F.2d 619, 621 (6th Cir.1973) (same); *Musifilm*,

*B.V. v. Spector*, 568 F.Supp. 578, 581–582 (S.D.N.Y.1983) (same). "The authority of the trial court to enforce a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the avoidance of costly and time-consuming litigation." *Rosso v. Foodsales, Inc.*, 500 F.Supp. 274, 276 (E.D.Pa.1980) (citation omitted); *accord, e.g., Kukla, supra*, 483 F.2d at 621.

■ None of the parties dispute the fact that the settlement agreement was entered into on March 20, 1990. Furthermore, as Judge Urbina found, the underlying action was never dismissed.[5] Consequently, the trial court was correct in ruling that it retained jurisdiction to enforce the terms of the settlement agreement.[6] *Autera, supra*, 136 U.S.App.D.C. at 219, 419 F.2d at 1200. In such circumstances, summary enforcement is "admirably suited" to cases like this one, "where ... a binding settlement bargain is conceded or shown, and the excuse for nonperformance is comparatively unsubstantial." *Id.* (footnote omitted); *accord, e.g., Mid–South Towing Co., supra*, 733 F.2d at 390; *Debose v. Mueller*, 552 F.Supp. 307, 308 (N.D.Ill.1982).

Nevertheless, appellants argue that, since the settlement agreement was not incorporated into a court order, the court lacked jurisdiction to enforce it. Neither rule nor case law supports this argument. *Autera*, in particular, makes no suggestion that a settlement agreement must be formally incorporated into a court order of the court to be enforceable.[7] In fact, *Autera*

---

3. The case had been reassigned to Judge Urbina upon Judge King's rotation to another part of the court.

4. *Autera* is, of course, binding authority on this court under *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971).

5. Appellants assert that the suit was dismissed by Judge King, but the record does not support this assertion. There is in the record no order or docket entry dismissing the suit, nor is there a stipulation of dismissal under Super.Ct.Civ.R. 41(a)(1). Accordingly, there is no reason to doubt the correctness of Judge Urbina's finding that the underlying suit was not dismissed by Judge King.

6. Even if the underlying action had been dismissed, the result would likely have been no different. A party seeking to compel enforcement of a settlement agreement after the underlying case has been dismissed may file a motion under Super.Ct.Civ.R. 60(b) to vacate the dismissal and reopen the original action. *See, e.g., Musifilm, B.V., supra*, 568 F.Supp. at 581 (interpreting substantially identical federal rule). If such a motion is granted, the court will then have jurisdiction to compel compliance as if the action had always been pending.

7. Appellants cite three cases in support of this proposition: *Fairfax Countywide Citizens Ass'n, supra*; *Backers v. Bit–She*, 549 F.Supp. 388 (N.D.Cal.1982); and *Denali Seafoods, Inc. v. Western Pioneer, Inc.*, 92 F.R.D. 763 (W.D.Wash.

is commonly cited for the proposition that a court's authority to enforce settlement agreements extends to those made orally and out of the presence of the court (as was the case in *Autera*). *See, e.g., Kukla, supra,* 483 F.2d at 621; *Debose, supra,* 552 F.Supp. at 308.

Appellants' remaining claim of error fares no better. They contend that because appellees breached certain requirements of the settlement agreement, they were estopped, as a matter of equity, from seeking court enforcement of the agreement. Judge Urbina ruled that this contention was "without merit in light of the Order of December 5, 1990, which required compliance with the settlement agreement." At the December 5 hearing Judge King identified what needed to be done by the parties to resolve the Open Items and ordered both sides to submit proposals toward that end within fifteen days. Judge Urbina found that, following that hearing, appellees complied with the court's order but appellants did not. There is no basis in

the record for appellants' claim of a breach by appellees. In addition, appellants' January 14 letter made no effort whatsoever to comply with the December 5 order; instead, it took the position that the court lacked authority to enforce the settlement agreement. Thus Judge Urbina's factual finding that only appellants failed to comply with the terms of the December 5 order is not clearly erroneous and must be upheld. *See* D.C.Code § 17–305(a) (1989). Appellants' estoppel argument must accordingly be rejected.

The order from which this appeal is taken is

*Affirmed.*

---

1981). All three are inapposite. *Fairfax Countywide* and *Backers* deal with the issue of a *federal* court's authority to compel compliance with a settlement in the context of the limited subject-matter jurisdiction of federal courts. *See Fairfax Countywide, supra,* 571 F.2d at 1304 n. 14; *Backers, supra,* 549 F.Supp. at 389. Nor does the third case, *Denali Seafoods,* hold that

settlement agreements must be incorporated into an order of the court to be enforceable. Rather, the court in that case refused to enforce the settlement agreement, in part, because the action had been dismissed more than a year and a half earlier and the court found insufficient reason to vacate the dismissal under Fed. R.Civ.P. 60(b).