Gary PUCKREIN, et al., Appellants,

v.

Timothy L. JENKINS, Appellee.

No. 02–CV–217.

District of Columbia Court of Appeals.

Argued Jan. 16, 2003.
Decided Sept. 29, 2005.

James E. McCollum, Jr., College Park, MD, for appellants.

Theodore R. Banks, III, Washington, DC, for appellees.

Before WAGNER,* RUIZ and GLICKMAN, Associate Judges.

WAGNER, Associate Judge:

Appellants [1] appeal from two orders of the trial court. The first order granted the motion of appellee, Timothy L. Jenkins, under Super. Ct. Civ. R. 60(b) (2001), for reinstatement of a complaint in this case that had been dismissed pursuant to a Consent Judgment. The second order denied appellants' motion for reconsideration of that ruling. We reverse and remand with instructions to vacate the order reinstating the complaint.

## I. Factual Background

On April 21, 1997, Jenkins filed a complaint in this case against appellants alleging fraud, breach of contract, conversion, breach of fiduciary duty, successor liability and declaratory judgment, which was assigned case number 97–CA–2977 (hereinafter referred to as the "first case"). The parties reached a settlement agreement that was embodied in a Consent Judgment that was signed by the parties and approved by the court (Judge Susan Winfield) on September 12, 2000. Under the terms of the Consent Judgment, appellants agreed to pay Jenkins $250,000 in three installments as follows: $100,000 on September 25, 2000; $100,000 on November 20, 2000; and $50,000 on March 20, 2001. Upon default in the payment of any of the foregoing amounts, the parties agreed to

the entry of judgment in the amount of $300,000, less any credits, against appellants AVC and AVM, "their assigns and successors as well as any entity with an ownership interest or control of the trade name *American Visions* or the publication rights associated with said name or magazine, including any entity in which Gary Puckrein possesses a controlling interest." The Consent Judgment states the parties' intention to resolve the protracted litigation without trial and with a mutual denial of all liability or fault. Further, the Consent Judgment provides that the parties

> hereby expressly, unconditionally and completely release, acquit and forever discharge each other from any and all claims, charges or demands[,] debts, liens, contracts, agreements, promises[,] liability, grievances, damages, loss, cost or expense in law or in equity, of any nature whatsoever fixed or contingent, known or unknown arising from this action (97CA2977)[,] and the [p]arties further agree that this Consent Judgment represents the full and complete settlement and that no [p]arty has any obligation to make or do any further act or thing beyond that set forth herein.

The Consent Judgment also provides that the parties mutually agree that "the enforcement of any further proceeding associated with this Consent Judgment shall remain with Judge Susan R. Winfield" during her tenure on the Superior Court.

The parties do not dispute that the first $100,000 payment was made as required. Upon appellants' default in payments

---

* Judge Wagner was Chief Judge of the court at the time this case was argued. Her status changed to Associate Judge on August 6, 2005.

1. Appellants, the defendants in the trial court, are: Gary Puckrein, Dialogue Diaspora, Inc. (DD), American Visions Communications, Inc. (AVC), American Visions Society (AVS), American Visions Media, Inc. (AVM), Allen F. Campbell and Joanne Harris.

thereafter, the trial court (Judge Winfield) granted Jenkins' Motion to Enforce a Confidential Consent Judgment and authorized him to proceed under Super. Ct. Civ. R. 69 (2000) to enforce the Consent Judgment in the amount of $225,605.00 plus interest and reasonable costs of collection until fully discharged.[2] This amount was in error, and appellants filed a motion for reconsideration. By order docketed on January 22, 2001, the trial court granted appellants' motion for reconsideration, or alternatively to alter and amend the judgment by reducing the judgment "by all payments made heretofore."

On July 31, 2001, Jenkins filed a second case (CA–01–5721) against appellants alleging civil conspiracy, breach of contract and tortious interference with contracts. The complaint also alleged that all defendants had committed subsequent acts of conspiracy, fraud and deception by having signed in bad faith the Consent Judgment in the first case and having failed to make the payments required under the judgment or to comply with the tax indemnifi-

cation provision. The trial court (Judge William M. Jackson), concluding that the parties were seeking relief for claims identical to those sought in the first case, dismissed the second case. In recognition of the provision in the Consent Judgment for retention of jurisdiction by Judge Winfield, Judge Jackson directed the parties to seek resolution of these claims before Judge Winfield.[3] Jenkins also filed a motion to reinstate the complaint in the second case, which Judge Jackson denied. Jenkins did not appeal from the dismissal of the second case or from the denial of his motion to reinstate the complaint in that case.

Jenkins then filed in the first case, pursuant to Super. Ct. Civ. R. 60(b), a motion to reinstate the complaint that had been dismissed in the second case. In the memorandum of points and authorities filed in support of the motion, Jenkins asserted that the new action was "separate and distinct" from claims settled by the Consent Judgment in the first case and outlined his reasons for that assertion.[4]

---

**2.** Super. Ct. Civ. R. 69 provides for the enforcement of judgment by a writ of execution in accordance with the practice and procedure existing at the time. It provides further for "the judgment creditor or a successor in interest ... [to] obtain discovery from any person, including the judgment debtor, in the manner provided in [Super. Ct. Civ. R.] 69–I." In turn, Super. Ct. Civ. R. 69–I(a) makes available to the judgment creditor "[a]ll discovery procedures authorized by Rules 26–37," subject to an order of the court for certain discovery. The rule also sets out procedures for oral examination in court, claims against property, and garnishment, including judgment against the garnishee. Super. Ct. Civ. R. 69–I(b)—(e).

**3.** The Consent Judgment in the first case provided for retention of jurisdiction as follows:

> It is understood and mutually agreed that the enforcement or any further proceeding associated with this Consent Judgment shall remain with Judge Susan R. Winfield of the

Superior Court of the District of Columbia during her tenure on that Court regardless of rotating court calendars.

*See, e.g., McCall–Bey v. Franzen,* 777 F.2d 1178, 1188 (7th Cir.1985) (expressing "no doubt of the power of a district judge to dismiss a lawsuit conditionally, retaining jurisdiction to effectuate terms of settlement agreed to by the parties").

**4.** Jenkins argued that his claims of civil conspiracy, breach of contract and tortious interference with contracts had not been litigated. He then listed the allegations in the first case which he contended demonstrated that the claims were distinguishable. Specifically, he stated that the first case consisted of the following counts:

> Count I, Fraud for false and untrue representations of clear title on the tradename, *American Visions;* Count II, Breach of Contract for default on Brown Printing Agreement; Count III, Breach of Contract for default on start-up loan; Count IV, Breach

Jenkins also stated that the motion was based on his discovery on August 14, 1998, of "new evidence" of the appellants' acts of fraud and conspiracy, which he alleged could not have been discovered previously because of appellants' acts of concealment. He also alleged that the appellants committed "an astonishing new act of fraud" on September 8, 2000, when they demanded arbitration. He alleged further that the appellants had committed acts of "conspiracy, fraud and deception" by signing the September 12, 2000, Consent Judgment in bad faith. Finally, Jenkins argued that the complaints were not identical, and stated that "[t]he new complaint ... alleges causes of action related to [appellants'] willful and wrongful breach of the above-cited Consent Judgment." The certificate of service on the motion to reinstate the complaint indicates that counsel for Jenkins mailed it to appellants' attorney by first class mail on January 4, 2002.

In the first case, the trial court (Judge Winfield) entered an order on January 8, 2002, resolving the motion, and amended it on January 11, 2002. The amended order was docketed on January 15, 2002. The amended order granted Jenkins' motion to reinstate the complaint that had been filed in the second case under the case and caption of the first case. The order also certified the case to Judge Mary Ellen Abrecht who had assumed responsibility for the calendar to which the second case was assigned.[5] On January 22, 2002, appellants filed a motion for reconsideration, which is docketed in the first case, listing both Judge Abrecht and Judge Winfield on the order. By order docketed on February 12, 2002, Judge Abrecht denied the motion for reconsideration in the first case and listed the second case as a "related case." The cases were never consolidated, however. Appellants timely noted the present appeal from the order effectively setting aside the final judgment and reinstating the complaint entered in the first case by Judge Winfield, and the order entered by Judge Abrecht, denying appellants' motion for reconsideration of Judge Winfield's order.[6]

of Contract for failure to repay pension funds as agreed; Count V, Breach of Contract for failure to pay purchase price of corporate stock; Count VI, Conversion for misuse of corporate funds to pay personal expenses; Count VII, Breach of Fiduciary Duty for unauthorized appropriations of funds to third parties without proper accounting; and Count VIII, Conversion for conspiracy to cause assets pledged as security to [be] transferred; Count IX, Successor Liability for fraudulent avoidance of back taxes through shell corporate transactions; Count X, Declaratory Judgment for the specific performance of a 50% equity in all assets of the corporate defendants; Count XI, Conversion for conspiracy by foreign director to cause assets to be transferred without proper notice and Count XII, Breach of Contract for failure to personally guarantee payments as required by general loan provisions.

5. A footnote to the order states that "[t]his court agreed to retain jurisdiction of the matter while the settlement was being enforced. Where, however, it now appears that the matter must proceed to trial, it must be recertified back to calendar 13."

6. Since we conclude that the trial court did not have authority to vacate the final judgment and reinstate the complaint on the basis of the record before it, its ruling is subject to appellate review. *See Colbert Refrigeration Co., Inc. v. Edwards*, 356 A.2d 331, 333–34 (D.C.1976) (holding that where the record before the trial court did not show that plaintiff was entitled to relief under Super. Ct. Civ. R. 60(b), the trial court lacked authority to set aside the judgment, and its order granting the motion was appealable.); *Smith v. Reese*, 221 A.2d 439, 440–41 (D.C.1966) (reversing the trial court's order vacating a default judgment where the record reflected no justification for granting relief under Rule 60(b) and holding that where "[the] court vacates a judgment after the time within which it has the power to do so, the order is appealable") (citations

## II.

Appellants argue that the trial court erred in granting Jenkins' motion to reinstate the complaint without affording them an opportunity to respond. They contend that while the certificate of service for the motion shows that Jenkins did not mail it until January 4, 2002, the trial court ruled upon the motion three days later, before the expiration of the time provided in the rules for a response. Jenkins claims that a certified copy of the Motion to Reinstate Complaint was mailed to appellants' counsel on November 6, 2001, and therefore, appellants were afforded an opportunity to respond. Jenkins' factual assertion is belied by the record which shows that his motion, filed on January 4, 2002, bears a certificate of service signed by his counsel showing mailing to appellants' counsel on that same date.

■ In a civil proceeding, by rule, an opposing party has ten days within which to file an opposition to a motion. Super. Ct. Civ. R. 12–I(e) (2003) (providing that after a motion is filed and served, "opposing points and authorities shall be filed and served within 10 days or such further time as the Court may grant."). This court has held that the failure to afford a party an opportunity to respond to motions as provided for by the court rules denies that party due process. *Grier v. Rowland,* 409 A.2d 205, 207 (D.C.1979) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)) (other citations omitted) (reversing denial of a motion to reinstate where violations of court rules denied appellants an opportunity to oppose a motion to compel and comply with an order of court, "thus denying appellants due process of law."). In *Grier,* this court stated that the trial court commits "fundamental error," when it provides no opportunity for a party to oppose a motion. *Id.* The failure to provide notice as required by the court's rules deprives the opposing side of an opportunity to raise objections, and the court's action on the motion or petition is erroneous as a matter of law. *See Evans v. Evans,* 441 A.2d 979, 980 (D.C.1982) (reversing trial court's denial of motion to vacate orders resulting in ratification of sale of real property where petition for sale and subsequent order were not served on the parties as required by court rule).

Here, the certificate of service shows that the motion was sent by mail to appellants on January 4, 2002. The trial court (Judge Winfield) ruled on the motion first on January 8, 2002, and amended its order January 15, 2002. Both actions were taken by the court before the expiration of the ten days provided by Rule 12–I(e) for appellants to respond. The day of service is not counted, and intermediate Saturdays and Sundays are excluded from the calculation where, as here, the time allowed by the rule for a response is less than eleven days. *See* Super. Ct. Civ. R. 6(a) (2003).[7]

omitted); *see also Consol. Radio Artists, Inc. v. Washington Section, Nat. Council of Jewish Juniors,* 105 F.2d 785, 787 & n. 2 (D.C.Cir. 1939) (holding that the court had jurisdiction to review an order setting aside a judgment, and noting that "[a] 'proceeding to set aside the original judgment is in effect an independent action, and the judgment therein final and reviewable'" (quoting *Stevirmac Oil & Gas Co. v. Dittman,* 245 U.S. 210, 216, 38 S.Ct. 116, 62 L.Ed. 248 (1917) (other citations omitted))).

7. Super. Ct. Civ. R. 6(a) provides in pertinent part:

In computing any period of time prescribed or allowed by these rules ..., the day of the act ... from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday.... When the period of time prescribed or allowed is less than 11 days, intermediate

January 4, 2002, was a Friday, and there were two intervening Saturdays and Sundays during the ten day period. Therefore, appellants had until January 18, 2002, to respond to the motion. The trial court erred in ruling on the motion without giving appellants an opportunity to respond within the period allowed by the rules. *See Evans, supra,* 441 A.2d at 980; *Grier, supra,* 409 A.2d at 207.

Appellants raised this issue in their motion for reconsideration. They set forth fully in the motion for reconsideration the factual basis for their contention that the trial court's orders had been issued without providing them with an opportunity to respond as permitted by the court's rules, thereby depriving them "of their constitutional rights of equal protection, procedural due process and substantive due process." Nevertheless, the trial court (Judge Abrecht) denied appellants' motion for reconsideration. This was also error. In this case, the errors were not harmless for reasons which will become apparent as we review appellants' other claims of error.

## III.

Appellants advance three additional reasons for urging reversal of the trial court's decision reinstating the complaint. Specifically, they contend that: (1) the motion to reinstate under Super. Ct. Civ. R. 60(b) is untimely; (2) a prior judgment in the present case (97–CA–2977) prevented "reinstatement" in this case of a complaint filed in a second action; and (3) the complaint had already been dismissed in the second case, and no appeal was taken from that decision. Apparently under the impression that the trial court reinstated the second case, Jenkins argues, as he did in the trial court, that the claims in the two cases are distinguishable and that the second complaint presents new issues for resolution by the court. Jenkins also contends that his motion under Super. Ct. Civ. R. 60(b) was timely.

### A. *Preliminary Considerations*

 We summarize and point out first some preliminary considerations that are important to understanding and resolving the issues. As stated previously, there were two cases between these parties which were never consolidated, designated for convenience as "first case" and "second case." We have before this court only appeals from two orders entered by the trial court in the first case. One of those orders granted Jenkins' motion to reinstate a complaint that had been filed in the second case. The second order from which an appeal was taken denied appellants' motion to reconsider the court's ruling purporting to reinstate in the first case, the complaint filed in the second action.[8] Therefore, our review is only of

---

Saturdays, Sundays, and legal holidays shall be excluded in the computation.

8. Standing alone, the denial of a Motion for Reconsideration is not an appealable order. *Perry v. Sera,* 623 A.2d 1210, 1214 n. 10 (D.C.1993) (citing *Jones v. American Express Co.,* 485 A.2d 607, 609 n. 4 (D.C.1984)) (other citation omitted). "However, if a Motion for Reconsideration has tolled the timing requirements for an appealable order, and an appeal is timely noted following the denial of the Motion for Reconsideration, both the appealable order and the Motion for Reconsidera-

tion may be reviewed." *Id.* (citing *Wallace v. Warehouse Employees Union # 730,* 482 A.2d 801, 810 (D.C.1984)). Where, as here, a party files a motion for reconsideration asserting an error of law, it is generally treated as a motion under Super. Ct. Civ. R. 59(e). *See Hahn v. District of Columbia Water & Sewer Auth.,* 727 A.2d 317, 319 n. 2 (D.C.1999) (" 'A motion for reconsideration asserting that the court committed an error of law will ordinarily be regarded as a motion under Super. Ct. Civ. R. 59(e) to alter or amend a judgment ....' ") (quoting *In re Tyree,* 493 A.2d 314,

errors claimed with respect to the two orders entered in the first case from which the appeals were taken. *See* D.C.App. R. 3(a) (2003) (specifying that "[t]he notice of appeal ... shall designate the judgment, order, or part thereof from which appeal is taken."); *see also Perry, supra* note 7, 623 A.2d at 1215 (noting that when more than one appealable order is entered, "the notice of appeal serves to indicate the one in fact appealed") (citation omitted).

The first case between the parties was resolved in the trial court by a Consent Judgment. "A consent judgment is an order of the court, 'indistinguishable in its legal effect from any other court order, and therefore subject to enforcement like any other court order.'" *Moore v. Jones,* 542 A.2d 1253, 1254 (quoting *Padgett v. Padgett,* 472 A.2d 849, 852 (D.C. 1984)) (other citation omitted). "[T]rial courts have the power to enforce settlement agreements in cases pending before them." *Confederate Mem'l Ass'n, Inc. v. United Daughters of the Confederacy,* 629 A.2d 37, 39 (D.C.1993) (citing *Autera v. Robinson,* 136 U.S.App. D.C. 216, 219, 419 F.2d 1197, 1200 (1969)) (footnote and other citations omitted). A Consent Judgment is also a contract that "should generally be enforced as written, absent a showing of good cause to set it aside, such as fraud, duress, or mistake." *Camalier & Buckley, Inc. v. Sandoz & Lamberton, Inc.,* 667 A.2d 822, 825 (D.C.1995) (quoting *Moore,* 542 A.2d at 1254); *see also Fields v. McPherson,* 756 A.2d 420, 424 (D.C.2000) (recognizing that only the most compelling reasons, such as fraud, duress or mistake, will justify modification of a voluntary settlement agreement) (citations omitted).

In this case, the underlying complaint was dismissed pursuant to the Consent Judgment. "A party seeking to compel enforcement of a settlement agreement after the underlying case has been dismissed may file [a] motion under Super. Ct. Civ. R. 60(b) to vacate the dismissal and reopen the original action." *Confederate Mem'l Ass'n, supra,* 629 A.2d at 39 n. 6 (citation omitted); *see also Board of Trs. of the Hotel & Rest. Employees Local 25 v. The Madison Hotel, Inc.,* 97 F.3d 1479, 1484 n. 9, 321 U.S.App. D.C. 145, 150 n. 9 (D.C.Cir.1996) (noting that some courts have relied on Rule 60(b)(6) where there has been "a breach of an agreement that was the basis for dismissal of a suit") (citations omitted). In appropriate circumstances, an aggrieved party can also file an independent equitable action. *See* Rule 60(b) (providing that Rule 60(b) "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court"); *see also Strategic Research Inst., Inc. v. Fabozzi,* 187 F.R.D. 507, 511 & n. 15 (S.D.N.Y.1999) (citing *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655, 661, 663 (2d Cir.1997)).

Jenkins filed first an independent action in the second case. However, the trial court determined in that case that Jenkins was asserting the same claims involved in the first case, dismissed it and referred the parties back to the judge who had retained jurisdiction in connection with the Consent Judgment. Jenkins did not appeal from the trial court's dismissal of the second compliant or from the denial of his subsequent motion to reinstate it.[9] Jenkins

---

317 n. 5 (D.C.1985)). There is no question of timeliness of the appeal in this case.

**9.** We recognize that Jenkins argues that his second complaint raised new and distinct claims. However, the trial court in the second case did not agree, and dismissed it. The propriety of the trial court's action in the second case is not before us in this appeal. According to the parties, no appeal was taken

then filed a motion in this case to reinstate the complaint dismissed in the second case. Although Jenkins did not ask explicitly that the court set aside the Consent Judgment, that appears to be the only reasonable way in which to view his motion in light of the nature of some of his allegations, the relief sought, and the rule under which Jenkins proceeded. Further, the trial court could not have reinstated the complaint and permitted Jenkins to proceed on a complaint it viewed to be the same claims underlying the Consent Judgment without first setting aside the dismissal. It is against that backdrop that we consider appellants' appeal from the orders of the trial court in the first case.

## B. Timeliness of the Motion Under Rule 60(b)

Appellants argue that the trial court did not have jurisdiction to grant the motion to reinstate the complaint in the first case under Super. Ct. Civ. R. 60(b) because more than one year had elapsed since the entry of judgment. Jenkins argues that the motion was timely because the trial court reinstated his complaint in the second case. He contends that his motion for reinstatement of the second case was filed well within one year of the dismissal of that case. The disposition of appellants' argument depends upon whether the motion can be considered as one filed in the first case or the second case.

As outlined in the preceding section, Jenkins is in error for several reasons in contending that the trial court reinstated the complaint in the second case. First, Jenkins filed the motion for reinstatement that resulted in the court's order now on appeal in the first case, and the trial court entered its order reinstating the later filed complaint in the first case. Second, the trial court (Judge Jackson) had denied days earlier Jenkins' motion for reinstatement in the second case. In its order denying reinstatement, the court reasoned that Jenkins was "seeking relief for claims *identical* to that sought in Civil Action No. 97–2977[, the first action]." (Emphasis added.) Therefore, the court ordered the parties, "consistent with Paragraph VII of the Consent Judgment ... to seek resolution of these claims before Judge Susan R. Winfield in Civil Action No. 97–2977." [10] Thereafter, Jenkins filed a motion in the first case identical in all material respects to the motion to reinstate previously denied by Judge Jackson. " 'The law of the case doctrine prevents relitigation of *the same issue in the same case* by courts of coordinate jurisdiction.' " *Sowell v. Walker*, 755 A.2d 438, 444 (D.C. 2000) (quoting *Johnson v. Capital City Mortgage Corp.*, 723 A.2d 852, 857 (D.C. 1999)) (emphasis in the original). No different issue was presented by the motion filed in the first case; therefore, the trial court (Judge Winfield) could not have granted the motion to reinstate the second case without violating the law of the case

from that order of dismissal, leaving it as a final disposition of the second case. *See Perry v. District of Columbia*, 474 A.2d 824, 825 (D.C.1984) (holding that "the dismissal of a complaint, even without prejudice, is a final order" for purposes of appellate jurisdiction); *see also Lloyd F. Ukwu, P.C. v. Bell Atlantic–Washington*, 652 A.2d 1109, 1110 (D.C.1995) (holding that the trial court's order dismissing a counterclaim without prejudice is an appealable final order) (citations omitted). Therefore, we proceed on the assumption that

the reinstated complaint was the one originally resolved by the Consent Judgment.

10. Paragraph VII of the Consent Judgment provides, in pertinent part, that "any further proceeding associated with this Consent Judgment shall remain with Judge Susan R. Winfield of the Superior Court ... during her tenure on that Court regardless of rotating court calendars."

doctrine. *See id.* (citing *Varela v. Hi–Lo Powered Stirrups, Inc.*, 412 A.2d 13, 17 (D.C.) (*rev'd on unrelated grounds*, 424 A.2d 61 (D.C.1980) (en banc))). Third, the trial court's order in the first case reveals no intention to reinstate the second case. On the contrary, it appears from the court's order that it expected the first case to proceed to trial. In reinstating the complaint under the case number for the first case, the trial court stated that its retention of jurisdiction had been only while the settlement was being enforced in the case before it and that "it now appears that the matter must proceed to trial . . . ." Thus, it appears that the court expected the case that it had settled previously to be reopened for trial by reason of its order. For these reasons, we conclude that the trial court's order was intended to reopen the first case rather than the second. Appellants challenge, in this appeal, the timeliness of Jenkins' motion to reopen the first case, and we must review the issue raised in light of the record as presented.

██ Appellants argue that, if Jenkins' motion is construed as one filed for relief from judgment under Super. Ct. Civ. R. 60(b) in the first case, it was untimely because the case was dismissed on September 13, 2000, and the motion was not filed until almost fourteen months later on January 4, 2002. They contend, therefore, that the court lacked jurisdiction to reinstate the complaint in the first case more than a year after its final disposition.

The timeliness of a motion under Super. Ct. Civ. R. 60(b) will depend upon the grounds upon which the motion is based. A motion for relief from judgment may be granted under Rule 60(b) for "(1) [m]istake . . .; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) . . .; (5) . . . it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment." Motions filed for one of the first three reasons (mistake, newly discovered evidence, or fraud) must be filed "not more than 1 year after the judgment, order, or proceeding was entered or taken," while other motions under the rule must be filed within a "reasonable time." Super. Ct. Civ. R. 60(b).

Jenkins did not specify in his motion the subsection of Rule 60(b) under which he sought relief. However, we can discern the grounds for the motion based on the reasons asserted therein. *See McMillan v. Choice Healthcare Plan, Inc.*, 618 A.2d 664, 665 n. 1 (D.C.1992) (identifying the subsection of Rule 60(b) under which an appellant proceeded from the reasons advanced in appellant's motion where not otherwise specified); *Combs v. Garin Trucking*, 825 F.2d 437, 441 n. 31, 263 U.S.App. D.C. 300, 304 n. 31 (D.C.Cir. 1987) (citing *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir.1979)) (noting that where a party does not specify the portions of Rule 60(b) relied upon, courts read the motion as invoking the subsections pertinent to the dispute).[11]

Jenkins' motion reasonably can be read to request Rule 60 relief on the grounds of newly discovered evidence, fraud, mistake

**11.** Since Super. Ct. Civ. R. 60(b) is identical in relevant part to the comparable federal rule, "we may look to decisions of the federal courts interpreting the federal rule as 'persuasive authority in interpreting' the local rule."

*Street v. Hedgepath*, 607 A.2d 1238, 1243 n. 5 (D.C.1992) (citing *Vale Properties, Ltd. v. Canterbury Tales, Inc.*, 431 A.2d 11, 13 n. 3 (D.C. 1981)).

and breach of the settlement agreement.[12] Jenkins asserted in the motion that he had discovered new evidence of appellants' acts of fraud and conspiracy that he could not have discovered previously because appellants allegedly had concealed them. However, he asserted in the memorandum in support of the motion that he discovered this new evidence on August 14, 1998, some two years before the settlement. Jenkins also claimed that appellants entered the agreement in bad faith and misled him. The alleged act of fraud related to appellants' demand for arbitration occurred on September 8, 2000, according to Jenkins. The Consent Judgment was entered on September 12, 2000, and pursuant thereto, the first case was noted on the docket as settled and dismissed the next day. To the extent that Jenkins' Rule 60(b) motion proceeded on the grounds of mistake, newly discovered evidence or fraud, it was untimely when filed on January 4, 2002, under subsections 1, 2 and 3 of Rule 60(b). *See* Super. Ct. Civ. R. 60(b) (requiring claims of mistake, newly discovered evidence and fraud to be filed no later than one year after judgment). Therefore, the trial court erred in granting Jenkins' motion to reinstate the complaint to litigate those claims based on fraud, mistake or newly discovered evidence under Rule 60(b)(1)-(3). Even if these grounds were considered under Rule 60(b)(6), Jenkins would have had to show why he could not meet the one year time requirement for Rule 60(b)(1), (2) and (3). *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*

*P'ship,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (holding that a party who failed to seek relief under Rule 60(b)(1) may not resort to subsection 6 more than one year after judgment.).

▇ Liberally construed, paragraph 4 of the complaint alleged that appellants breached the provisions of the Consent Judgment by failing to make all of the payments due thereunder and by failing to comply with the provisions of indemnification against certain tax claims. We have observed that "[a] party seeking to compel enforcement of a settlement agreement after the underlying case has been dismissed may file [a] motion under Super. Ct. Civ. R. 60(b) to vacate the dismissal and reopen the original action." *Confederate Mem'l Ass'n, supra,* 629 A.2d at 39 n. 6 (citation omitted); *see also Madison Hotel, supra,* 97 F.3d at 1485 n. 9, 321 U.S.App. D.C. at 150 n. 9 (noting that some courts have relied on Rule 60(b)(6) where there has been "a breach of an agreement that was the basis for dismissal of a suit") (citations omitted); *Neuberg v. Michael Reese Hosp. Found.,* 123 F.3d 951, 955 (7th Cir.1997) (noting that some courts hold that complete repudiation of a settlement agreement is an extraordinary development justifying Rule 60(b)(6) relief, a principle that the Seventh Circuit had agreed with in *dicta* ) (citations omitted).[13] A motion filed under Super. Ct. Civ. R. 60(b)(6) must be made within a reasonable time. Super. Ct. Civ. R. 60(b). What constitutes a reason-

---

**12.** In light of our disposition, we need not address the adequacy of the complaint to state the claims, particularly any claim of fraud.

**13.** There appears to be a split of authority on the issue. *Madison Hotel, supra,* 97 F.3d at 1484–85 n. 9. Some courts hold that a breach of a settlement agreement is insufficient to require vacating a dismissal under Rule 60(b)(6). *See, e.g., Sawka v. Healtheast, Inc.,* 989 F.2d 138, 140–41 (3d Cir.1993) (relief

under Rule 60(b)(6) is available only in extraordinary circumstances; therefore, the availability of a cause of action to enforce the judgment precludes its application); *Harman v. Pauley,* 678 F.2d 479, 480–82 (4th Cir.1982) (holding that the interest of justice does not require reopening a dismissed case under Rule 60(b)(6) where an action to enforce the settlement is available).

able time under the rule depends upon the circumstance of each case. *Profitt v. Smith,* 513 A.2d 216, 218 (D.C.1986) (citing *Tribble v. American Mut. Ins. Co.,* 277 A.2d 659, 661 (D.C.1971)) (other citations omitted).

Appellants challenged the timeliness of the Rule 60(b) motion in their motion for reconsideration, which was their first opportunity to do so. They contended that the motion was untimely, having been filed more than a year after the dismissal of the complaint in the first case. They also argued that the motion did not present the exceptional or extraordinary circumstances required for relief under the rule. Jenkins argued that the time between the date of dismissal of the second case to the date he filed his motion was not unreasonable. The trial court's order denying appellants' motion for reconsideration does not address the timeliness of Jenkins' request for relief under Super. Ct. Civ. R. 60(b)(6).

This court has held that the trial court did not abuse its discretion in denying a motion to vacate summary judgment under Rule 60(b)(6) filed almost a year after its entry. *Profitt, supra,* 513 A.2d at 218. In making its ruling, the court considered in *Profitt* that the affidavit, in support of the motion had been prepared eight months before the motion was filed and that an examination needed in order to obtain the affidavit had occurred two months earlier. *Id.* On these facts, this court determined that the time taken to seek relief was unreasonable under Rule 60(b)(6). *Id.* A motion filed almost fourteen months after the dismissal of the suit, absent compelling reasons for the delay, has been held to be untimely under Rule 60(b)(6). *See, e.g., Pioneer Inv. Servs., supra,* 507 U.S. at 393, 113 S.Ct. 1489 (party seeking relief under Rule 60(b)(6) must show "extraordinary circumstances" why it could not seek relief in one year as permitted under Rule 60(b)(1)); *see also Neuberg, supra,* 123 F.3d at 952, 954–55 (affirming denial of plaintiffs' Rule 60(b)(6) motion as untimely where the motion was filed twenty-one months after the entry of judgment and some fifteen months after plaintiffs knew that settlement had fallen through). The record does not show why Jenkins could not file his request for relief from the dismissal within one year. *See Pioneer Inv. Servs.,* 507 U.S. at 393, 113 S.Ct. 1489.

Here, the first case was dismissed on September 13, 2000, pursuant to a Consent Judgment docketed that date. It appears from the pleadings filed thereafter that appellants failed to make the payments due under the settlement agreement on November 20, 2000, thereby breaching the terms of the Consent Judgment. By order filed on November 29, 2000, and docketed on December 13, 2000, the trial court granted Jenkins' motion to file a motion to enforce the Consent Judgment. By order entered on January 8, 2001, the trial court granted Jenkins' unopposed motion to engage in post-judgment discovery under the provisions of Super. Ct. Civ. R. 69.[14] Jenkins filed his complaint in the second action in July 2001 alleging appellants' breaches of the terms of the Consent Judgment.[15] Thus, the record reflects that Jenkins was aware of appellants' initial breaches of the Consent Judgment as early as November 2000, and he was aware of the grounds upon which he is seeking relief under Rule 60(b) at least by the time he filed the second action on July 2001. Jenkins did not file the motion seeking to reinstate the complaint in which he seeks to revive claims previously dismissed in September 2000 until January 4, 2002. On

---

14. *See* supra note 2.

15. He also asserted what he characterized to be new and distinct claims.

this record Jenkins did not show that he filed his motion for relief under Rule 60(b)(6) within a reasonable time, since he filed it some sixteen months after the dismissal and at least six months after he knew of the grounds he asserts for the motion. *See Profitt, supra,* 513 A.2d at 218; *see also Pioneer Inv. Servs., supra,* 507 U.S. at 393, 113 S.Ct. 1489.

Even assuming that the motion could meet Rule 60(b)'s requirement that the motion be filed within a reasonable time, there is another condition that must be met before the court can set aside a final judgment or dismissal under Super. Ct. Civ. R. 60(b)(6). "Rule 60(b)(6) is intended for 'unusual and extraordinary situations justifying an exception to the overriding policy of finality.'" *Profitt, supra,* 513 A.2d at 218 (quoting *Railway Express Agency, Inc. v. Hill,* 250 A.2d 923, 925 (D.C.1969) (other citations omitted)); *Provident Sav. Bank v. Popovich,* 71 F.3d 696, 700 (7th Cir.1995) (citations omitted) ("In a rule already limited in application to extraordinary circumstances, proper resort to this 'catch all' provision is even more highly circumscribed."). In *Profitt,* appellants sought to set aside the entry of summary judgment against them. 513 A.2d at 218. The basis of appellants' motion in *Profitt* was that they had finally obtained an expert witness who was willing to support their claims. *Id.* This court upheld the trial court's order denying the motion in part, concluding that this was not an unusual or extraordinary situation required for relief under subsection 6 of the rule. *Id.*[16]

■ We agree with those courts that hold that a breach of a settlement agree-

ment in itself, where a remedy is available for enforcement, does not present the extraordinary situation contemplated for application of Rule 60(b)(6) relief. *See, e.g., Sawka, supra* note 12, 989 F.2d at 140–41 (holding that extraordinary circumstances are not presented for Rule 60(b)(6) relief where the party can "file a separate action on the settlement agreement itself"); *Harman, supra* note 12, 678 F.2d at 481 (affirming the district court's order denying Rule 60(b)(6) relief where an action to enforce the settlement was available and more appropriate than reopening the dismissed action); *see generally Madison Hotel, supra,* 97 F.3d at 1484 n. 9 (discussing the split of authority "as to whether a breach of a settlement agreement can lead to rescission of a dismissal and reversion to a party's original federal claims"). The availability of an adequate remedy prevents a claim that extraordinary circumstances exist or that the denial of relief from the judgment would present an extreme hardship. *See Sawka,* 989 F.2d at 140 (citations omitted) (stating that Rule 60(b)(6) relief "may only be granted under extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur").

■ In this case, Jenkins has a valid and subsisting judgment in the first case. He has available the usual remedies for enforcement of the judgment. Indeed, he has availed himself of remedies under the Consent Judgment and Super. Ct. Civ. R. 69.[17] The Consent Judgment provides for recovery of costs, expenses and attorney's fees by the prevailing party in an action for enforcement. No showing is apparent from the record why his claims for breach

---

16. In *Profitt,* the court also held that the motion was untimely, but noted the additional reasons in holding that the trial court did not abuse its discretion in denying the motion. 513 A.2d at 218 (citation omitted).

17. *See supra,* note 2.

of contract, fraud or mistake require the extraordinary remedy of setting aside the dismissal of the case. Only compelling reasons, such as fraud, duress, or mistake, will permit a consent judgment to be set aside. *Camalier & Buckley, supra,* 667 A.2d at 825 (citing *Suitland Parkway Overlook Tenants Ass'n v. Cooper,* 616 A.2d 346, 351 (D.C.1992) (other citation omitted)). To make such a showing, ordinarily an evidentiary hearing will be required. *Fields, supra,* 756 A.2d at 424–25 (holding that absent an evidentiary hearing, the trial court had an inadequate basis to determine whether a consent agreement resulted from a mistake and should be set aside). No evidentiary hearing was held at which a determination was made that grounds existed to set it aside before the complaint was reinstated in the first case.

■■■■■ Whether to grant or deny a motion for relief under Rule 60(b)(6) is committed to the sound discretion of the trial court. *Reid v. District of Columbia,* 634 A.2d 423, 424 (D.C.1993); *Profitt, supra,* 513 A.2d at 217–18 (holding that the grant or denial of a Rule 60(b)(6) motion lies within the trial court's discretion) (citations omitted); *see also Provident Sav. Bank, supra,* 71 F.3d at 700 (holding that the trial court did not abuse its discretion in denying a motion under Rule 60(b)(6)). This court will only reverse a trial court's decision thereon for an abuse of discretion. *Reid,* 634 A.2d at 424; *Profitt,* 513 A.2d at 217–18; *Provident Sav. Bank,* 71 F.3d at 698 (citations omitted). Upon review, we consider whether the trial court recognized that it had discretion and purported to exercise it. *Johnson v. United States,* 398 A.2d 354, 363 (D.C.1979). Generally, in

determining whether the trial court abused its discretion, consideration is given to " 'whether the decision maker failed to consider a relevant factor, whether he [or she] relied upon an improper factor, and whether the reasons given reasonably support the conclusion.' " *Pinkney v. United States,* 851 A.2d 479, 491 (D.C.2004) (quoting *Johnson,* 398 A.2d at 365). Although the trial court need not give detailed reasons for its decision, there should be some indication that the court " 'perceiv[ed] [these] salient factors' when exercising its discretion." *Id.* (quoting *Leak v. United States,* 757 A.2d 739, 745 (D.C.2000)).

■■■ In this case, it appears that the trial court did not consider the proper factors in granting Jenkins' motion to reinstate the complaint. A prior order of dismissal can not be vacated simply because one of the parties has breached the settlement agreement that formed the basis for the dismissal. *Harman, supra* note 12, 678 A.2d at 481–82 (affirming the district court's ruling denying relief under Rule 60(b) where the interest of justice did not require it).[18] The standard under Rule 60(b)(6) is a stringent one, requiring a showing of unusual or exceptional circumstances. *See Profitt, supra,* 513 A.2d at 218; *Neuberg, supra,* 123 F.3d at 955; *see also Provident Sav. Bank, supra,* 71 F.3d at 700. Since there was no showing that the standard was met here, the trial court (Judge Winfield) abused its discretion in reinstating Jenkins' complaint and effectively setting aside the Consent Judgment, and the trial court (Judge Abrecht) abused its discretion in denying the motion for reconsideration.

18. In *Harman,* having balanced the requirements of the interest of justice against the finality of litigation, the district court determined that " '[a]n action to enforce the settlement of the earlier [law]suits [wa]s more appropriate ... than an attempt to re-open the

... suits' " that had been dismissed. *Id.* at 481. The circuit court agreed, observing that the moving party had an available remedy for breach of the settlement agreement against the breaching party. *Id.* at 481–82.

For the foregoing reasons, we reverse and remand with instructions to vacate the order reinstating the complaint.

*So ordered.*