TRG CONSTRUCTION,
INC., Appellant,

v.

DISTRICT OF COLUMBIA WATER & SEWER AUTHORITY, Appellee.

No. 11–CV–896.

District of Columbia Court of Appeals.

Argued Oct. 17, 2012.

Decided May 9, 2013.

Daryle A. Jordan, for appellant.

Curtis A. Boykin, Washington, DC, with whom Frederick A. Douglas, Washington, DC, and Alex M. Chintella were on the brief, for appellee.

Before WASHINGTON, Chief Judge, McLEESE, Associate Judge, and KING, Senior Judge.

KING, Senior Judge:

This case arises out of a contract dispute between the District of Columbia Water and Sewer Authority (D.C.Water) and its contractor, TRG Construction. TRG was hired to renovate the bathrooms at D.C. Water's Central Operations Facility. The project took longer than both parties originally anticipated and disputes arose. Ultimately, D.C. Water terminated TRG "for convenience" in accordance with the contract. TRG then filed claims for various damages. After TRG's claims were denied by D.C. Water, TRG filed this action in the District of Columbia Superior Court, where the trial judge granted D.C. Water's motion for partial summary judgment in full. This appeal followed.

We remand the case to the trial court for a determination of whether TRG is entitled to "termination for convenience" damages and whether D.C. Water waived a "timeliness" defense with respect to TRG's claim for delay damages. In all other respects we affirm the decision of the trial court.

When TRG initially contracted with D.C. Water, it agreed to complete the bathroom renovations by June 13, 2004. However, delays plagued the project, and the dead-

line for completion was eventually extended to July 31, 2005. Shortly before that deadline, TRG asked for another extension. On August 4, 2005, D.C. Water responded by asking for a "Time Impact Analysis" explaining the delay and the proposed extension. TRG failed to provide the Analysis within D.C. Water's five calendar-day window, but did submit an Analysis in eleven days, on August 15. D.C. Water declined to grant the request, based on both the merits and because it was late. Shortly thereafter, D.C. Water sent TRG a "Cure Notice," explaining "what it claimed were numerous deficiencies" in the work TRG had already completed. TRG declined to fix the problems D.C. Water complained of, arguing both that its work was not defective and that the guarantee period for its work had expired. On September 2, 2005, D.C. Water terminated TRG's contract "for convenience" under 21 DCMR § 5350.1.[1]

TRG claims a variety of damages stemming from D.C. Water's conduct under the contract.[2] Each will be addressed in turn.

### I. Termination for Convenience Damages

In Count IV of its complaint, TRG claims "termination for convenience" damages. Under the contract with D.C. Water, if TRG was terminated for convenience, it was still entitled to "the cost" of any work already performed under the contract, plus a "fair and reasonable" amount of profit for that work. However, D.C. Water was also entitled to "deduct[ ] ... any claim which [D.C. Water] may have against [TRG] in connection with the contract."

TRG initially claimed it was entitled to the following: payment of the last two invoices it submitted to D.C. Water in the amount of $44,798.60; the cost of increasing its bond premiums; the cost of materials it purchased and left with D.C. Water; and anticipatory profits.[3] In response, D.C. Water argues that it properly withheld TRG's payment because it had its own claims against TRG. According to D.C. Water, because TRG failed to (1) timely submit a Time Impact Analysis in response to D.C. Water's August 4, 2005 letter, and (2) "respond to the cure notice" or "commence repairs," D.C. Water was permitted to "deduct[ ] its claims against TRG" from the termination for convenience award, reducing it to zero.

We must remand for further consideration of this issue. The Superior Court's opinion granting summary judgment does not adequately explain the basis for denying the relief sought even if D.C. Water was correct in finding that the Time Impact Analysis was inadequate and there was a failure to cure. Further, the court

1. D.C. Water now operates according to a new set of procurement regulations with different numbering. All citations are to the pre-June 12, 2009 regulations that governed this contract.

2. TRG's complaint included five counts. Count I alleged a "breach of [an] express written contract." Count II sought damages for a "failure to extend contract based on excusable delay." Count III alleged "failure to compensate TRG for excusable delay." Count IV sought "termination for convenience" compensation. Finally, Count V alleged a breach of good faith and fair dealing based on the alleged seizure of TRG's bond and supplies. TRG does not appeal from the trial court's dismissal of its claims under Count II, and voluntarily dismissed the portions of Count V based on D.C. Water's alleged retention of TRG's supplies prior to this appeal. The disposition of the remaining claims will be discussed further, *infra*.

3. TRG's contract with D.C. Water clearly forbids the payment of "anticipatory profits or consequential damages" under a termination for convenience claim. TRG appears to have conceded that it is not entitled to such profits.

did not explain, in light of the principles set forth below, the basis for concluding that TRG was obligated to cure. Finally, the court appeared to erroneously characterize TRG's claim as one based entirely on a theory that D.C. Water acted in "bad faith" when terminating the contract.[4] We do not understand TRG's termination for convenience claim this way, and TRG concedes that D.C. Water had the power to terminate the contract. Further, D.C. Water has not argued that this court should affirm on the basis of the reasoning set forth by the trial judge in the summary judgment order. As a result, we reverse the Superior Court's order as to Count IV of TRG's complaint and remand the case to the trial court for further proceedings on this issue.

■ Because our case law on termination for convenience claims is not well developed, we will also highlight some principles to guide the Superior Court on remand. As we have noted before, "[w]ith few exceptions, District contracting practice parallels federal government contract law." *District of Columbia v. Organization for Envtl. Growth, Inc.*, 700 A.2d 185, 198 (D.C.1997) (quoting *Dano Res. Recovery, Inc. v. District of Columbia*, 620 A.2d 1346, 1351 (D.C.1993)). Further, the termination for convenience language at issue in this case closely resembles the termination for convenience language in the federal acquisition regulations. *See* 48 C.F.R. § 52.249–2(g)(2), (k) (2012). Therefore, we conclude that the decisions of the federal courts on termination for convenience are persuasive authority on related issues. *Cf. Puckrein v. Jenkins*, 884 A.2d 46, 56 n. 11 (D.C.2005) (federal cases interpreting rules identical to the local rules are persuasive authority); *Perry v. Gallaudet Univ.*, 738 A.2d 1222, 1226 (D.C.1999) ("Interpretations of federal rules identical to our rules are accepted as persuasive authority.").

■ The federal courts have been careful to balance the ability of the government to freely terminate a contract for convenience with the corresponding right of a contractor to recover costs after being terminated. Specifically, the courts have held that, following a termination for convenience, a contractor "is entitled to recover for its reasonable, allocable, and allowable costs incurred with respect to termination inventory even if such inventory did not comply in all respects with specification requirements." *Best Foam Fabricators, Inc. v. United States*, 38 Fed. Cl. 627, 640 (1997) (quoting *New York Shipbuilding Co.*, ASBCA No. 15443, 73–1 B.C.A. ¶ 9852 at 46,018–19). However, a contractor's costs are not recoverable if they stem from a "gross disregard by [the contractor] of its contractual obligations." *Id.* (quoting *New York Shipbuilding, supra*, 73–1 B.C.A. at 46,019). Further, after a termination for convenience, "the government may not obtain reprocurement costs for work that it prevented [the contractor] from performing." *United Partition Sys., Inc. v. United States*, 90 Fed.Cl. 74, 95 (2009). Finally, the government must prove the amount of its claims. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 769 (Fed.Cir.1987).

■ D.C. Water appears to concede that, "[u]pon terminating a contract for convenience, the government loses whatev-

---

4. We note that, before the trial court, TRG did argue that D.C. Water acted in bad faith when it terminated the contract, and there is case law suggesting that the government may not terminate a contract for convenience in bad faith. *See, e.g., Linan–Faye Const. Co., Inc. v. Housing Auth. of City of Camden*, 49 F.3d 915, 923–25 (3d Cir.1995). However, this claim, which TRG does not renew on appeal, is distinct from TRG's claim in Count IV of the complaint that it is entitled to certain payments under the termination for convenience language in its contract with D.C. Water.

er right it has to hold the contractor responsible for correcting deficiencies in the work included in the terminated portion of the contract." And we agree that the rule explained in *Best Foam, supra,* 38 Fed.Cl. at 640, clearly prohibits the government from claiming that a contractor is not entitled to a recovery merely because the work "did not comply in all respects with specification requirements." Despite its apparent concession and the contrary authority, D.C. Water claims in its brief that it was entitled to withhold payments based on TRG's pre-termination refusal to "correct its deficient work." At oral argument, however, D.C. Water suggested it was also entitled to damages related to the cost of hiring another contractor to complete or repair TRG's work. We recognize that the Federal Circuit, in *Lisbon Contractors, supra,* 828 F.2d at 769, specifically refused to rule on the question of whether the government may deduct the cost of replacing defective work from a termination for convenience recovery.[5] On the other hand, costs associated with the reprocurement of contracted-for services are not deductible for the reasons given in *United Partition Sys., supra,* 90 Fed.Cl. at 95. Because D.C. Water has not made it clear which costs it claims it should be permitted to deduct from TRG's recovery, we decline to rule on this issue without a more developed record. On remand, D.C. Water will have the opportunity to clarify the nature and amount of its claims against TRG.

Within the framework established by federal case law, and with further clarification from the parties as to the nature of their claims against one another, the Superior Court should determine on remand whether its grant of summary judgment in favor of D.C. Water is appropriate. If D.C. Water's permissible claims are greater than the amount to which TRG would otherwise be entitled under the contract, then summary judgment will be appropriate. We note that conducting this analysis may also require an evaluation of TRG's argument that none of its work was, in fact, substandard. We express no opinion about the quantity or quality of the evidence in support of that claim, or whether that evidence creates an issue of disputed fact.

## II. *Delay Damages*

■ In Count III of its complaint, TRG sought recompense for damages it suffered as a result of delays allegedly caused by D.C. Water. Originally, TRG submitted this claim to D.C. Water over a year after it was terminated for convenience. Because the contract contained a provision requiring all claims for damages to be filed within thirty days "from the date of the occurrence of the event giving rise to the claim," the Superior Court granted summary judgment to D.C. Water. *See* 21 DCMR § 5346.3.[6] On appeal, TRG renews the argument made in Superior Court that D.C. Water waived this provision when, prior to TRG's suit, it denied TRG's claim for damages "on the merits" without raising the issue of untimeliness. Indeed, D.C. Water did not assert any untimeliness defense until well after this litigation had already begun. According to TRG,

---

**5.** Since *Lisbon Contractors* (but before *Best Foam* ), at least one of the administrative boards with jurisdiction over federal government contracts permitted deductions for defective and un-cured work. *See Aydin Corps.,* EBCA No. 355–5–86, 89–3 BCA ¶ 22044, 1989 WL 74785, *40 ("In fairness, where no opportunity to correct deficiencies was afforded, no deduction for uncorrected work should be made. In this case, however, termination occurred very late in performance, after [the contractor] had delivered virtually all the hardware to the site, and had ample time to make corrections, which [the government] had repeatedly requested.").

**6.** See note 1, *supra.*

the defense was not raised until D.C. Water's April 21, 2010 motion for partial summary judgment, over a year after D.C. Water filed its initial answer in this action.

We disagree with the Superior Court's conclusion that the thirty-day window for claims in 21 DCMR § 5346.3 necessarily bars TRG's recovery on these damages. Instead, we hold that the protection of filing deadlines, like 21 DCMR § 5346.3, can be waived if not timely asserted. In several cases, federal courts charged with interpreting government contracts have reached this same conclusion. *See Mega Const. Co. Inc. v. United States*, 29 Fed.Cl. 396, 444 (1993); *H.H.O. Co. v. United States*, 12 Cl.Ct. 147, 160 (1987) (holding, in regards to an untimely claim, that "the contracting officer may be deemed to have waived untimeliness by considering the claim on the merits"); *Copco Steel & Eng'g Co. v. United States*, 169 Ct.Cl. 601, 341 F.2d 590, 598 (1965) ("Lack of strict compliance with many kinds of contract requirements concerning writings and notifications have frequently been held to be of no consequence where the conduct of the parties have made it clear that formal adherence would serve no useful purpose or that the parties have in fact waived it.").

While we recognize that some of these decisions discuss claims submitted under a different type of contractual provision than the one at issue in this case (a "Changes" provision, as opposed to the "Disputes" provision discussed here), we do not find that distinction determinative. Rather, we read those decisions as applying a broader equitable principle: a "wholesome concern that notice provisions in contract-adjustment clauses not be applied too technically and illiberally where the Government is

quite aware of the operative facts." *Hoel–Steffen Const. Co. v. United States*, 197 Ct.Cl. 561, 456 F.2d 760, 768 (1972).[7] Accordingly, we remand the case for further consideration of whether D.C. Water's actions in this case constituted a waiver of the time limit articulated in 21 DCMR § 5346.3.

### III. Bond Retention Damages

■ TRG also complains that D.C. Water "wrongfully retained" a bond that TRG had secured to guarantee its work for one year, commencing from the time that work was completed. However, like the Superior Court, we conclude that TRG's "proof of damages is insufficient and highly speculative." We are not persuaded by TRG's analogy to *Linan–Faye, supra*, 49 F.3d at 930 n. 19. In that case, the Third Circuit noted that the contractor had not "set forth a theory of recovery for damages due to improper retention of the performance bond following termination." *Id.* The court concluded that "the appropriate measure of damages would be compensation for jobs *lost* by Linan–Faye (after termination) that resulted from [the government's] action." *Id.* (emphasis added). Here, TRG has only shown that, because of its decreased bonding authority, there were jobs it did not "pursue" and it could not "submit certain bids." However, as the Superior Court noted, only one of the unpursued jobs fell outside the one-year period during which TRG was obligated by its contract with D.C. Water to maintain the bond. *See International Data Prods. Corp. v. United States*, 492 F.3d 1317, 1323 (Fed.Cir.2007) (finding that specific contractual warranties survived termination for convenience). Because TRG cannot

7. We are not persuaded by D.C. Water's argument that barring TRG's claim as untimely in this case is necessary to prevent D.C. Water from being inundated by late claims in the future. Raised properly, 21 DCMR § 5346.3 could have barred an untimely claim. We only rule here that 21 DCMR § 5346.3 can also be waived when D.C. Water fails to assert it in a timely fashion.

establish that its lack of bonding authority prevented it from receiving any specific contract that it would have otherwise obtained, we affirm the Superior Court's order as to Count V of the complaint.[8]

We affirm the trial court's order granting summary judgment to D.C. Water on Counts I (bond-related claim) and V (wrongful retention of bond) of TRG's Complaint.[9] We remand the case for further consideration of Counts III (delay damages) and IV (termination for convenience damages).[10]

*So ordered.*

---

**8.** On appeal, TRG argues that it also had bond-related claims in Count I of the complaint. However, TRG does not argue that those claims were based on a different theory of damages from those in Count V. Accordingly, we apply the Superior Court's well-reasoned conclusions to both sets of claims.

**9.** TRG does not challenge the portions of the order that granted summary judgment to D.C. Water on the non-bond-related sections of Count I and V.

**10.** Because this is a case remand, the trial court is free to consider other factors brought to its attention by the parties. Further, if the trial court, upon reconsideration, again grants summary judgment to D.C. Water, TRG must file a new Notice of Appeal in order to obtain review by this court of that ruling. *See Bell v. United States,* 676 A.2d 37, 41 (D.C.1996).